CAMBRE v. BRIGNAC ET AL.

(March 16, 1932. Opinion and Decree.)
(April 21, 1932. Opinion Corrected.)

Guion & Upton, of New Orleans, attorneys for plaintiff, appellee.

Martin, Woods & Woods, of Lutcher, attorneys for defendants, appellants.

JANVIER, J. Elize Cambre and Fortuna Brignac are rival candidates, each seeking selection by the Democratic Party as nomi-

nee to enter the general election to be held for justice of the peace of ward 1 of St. James parish. In the first primary held during January, 1931, the two parties named were the sole remaining contestants and a second primary was held.

The St. James parish Democratic committee, having canvassed the returns of the second primary, and having declared that the two candidates each received 187 votes, and that no nominee had been selected by the party, Cambre brought this suit within the time permitted by law and seeks to have himself declared nominee because of the fact that one Pierre Poche, an alleged qualified and registered voter, who desired to vote for Cambre in the said second primary election, had been, by the commissioners of election, refused a ballot and denied permission to vote.

The St. James parish Democratic committee is also made party defendant by service upon Henry L. Himel, chairman.

The main defense is twofold, and there is also and in the alternative a reconventional demand in which it is contended that a certain Leonard Ordineaux, who is alleged to have voted for Cambre in the said primary election, should be declared ineligible as not duly qualified as an elector in ward 1 of the parish. It is thus demanded, by way of reconvention, that the total number of votes received by Cambre, even if he be entitled to the vote of Poche, should be reduced by the deduction of the vote of Ordineaux.

The two main defenses to which we have referred are as follows: That prior to the said primary the registrar of voters had, for legal cause and in the manner provided by law, removed from the registration rolls of ward 1 the name of the said Poche, and that, regardless of whether the said removal had been legally effected or not, the primary election laws and the registration laws of the state do not permit an attack of this kind, but provide another and an exclusive method by which an elector, illegally deprived of his registration, may obtain redress.

The district court rendered judgment for plaintiff, ordering that his name be certified to the secretary of state as the party nominee, and the contest is now before us on appeal from that judgment.

In opposition to the reconventional demand of Brignac, in which he maintains that the vote of Ordineaux should be deducted from the total cast for Cambre, Cambre has filed a plea of prescription founded on section 27 of Act No. 97 of 1922, under which section it is provided that "no contest shall be entertained unless brought within two days after the official promulgation of the result of the election." The reconventional demand in which the vote of Ordineaux was contested was not filed until March 5, 1932, and, as the returns were promulgated on February 27, 1932, it is evident that more than two days elapsed between the time of the promulgation and the time at which the contest as to Ordineaux's vote was instituted. But Brignac contends that the prescriptive period does not apply when the contest appears by reconventional demand, and, in support of this view, he cites Thornhill v. Wear, 131 La. 479, 59 So. 909, 910, in which, in a contest for party nomination, the defendant, Wear, who had, by the committee, been declared the nominee, set up, in answer to an attack by plaintiff, Thornhill, a reconventional demand in which he contested the legality of certain votes which had been cast for Thornhill.

In overruling a plea of prescription to the reconventional demand the court said that:

"Plaintiff would scarcely have time to present his reconventional demand within the two days allowed to institute this suit. Plaintiff could not well institute a suit without knowing whether the action of the judicial executive committee would be questioned by contestant."

We are not at all certain that the reasons given in that case are applicable here because there Wear, the defendant and contestee, had been declared the party nominee and, manifestly, there was no reason, however illegal may have been some of the votes cast for his opponent, for him to initiate a contest over those votes. Thus, if with only two days provided for the filing of a contest, the unsuccessful candidate should wait until the last moment to file his contest, the successful party would, if the prescriptive period be applicable, be deprived of the right to attempt to eliminate illegal votes against him. In such case his attack on the illegal votes of his opponent is not a move of aggression, but one of defense, and it is easily understood why his right to use such contest purely as a defense should not be denied under a plea of prescription. Here, however, defendant is no more the successful party than is plaintiff, and in his reconventional demand he does not limit himself to defense, but becomes the aggressor when he asks that the vote of Ordineaux be rejected, not only for the purpose of defeating the claim of Cambre, but also for the purpose of permitting him (Brignac) to be declared nominee.

But whether the plea of prescription be good or not, it appears to us that, since the vote of Ordineaux has been cast and counted, and since the right of Ordineaux to cast the said vote was never questioned prior to nor at the election, it cannot be questioned now, and we base our views on this point largely on the decision of the Supreme Court in Perez v. Cognevich, 156 La. 331, 100 So. 444, 447, in which, after an election, it was sought to have the courts reject certain votes already cast. The court said:

"If these persons had no right to vote because they were not entitled to a place upon the registration rolls, or because they were not entitled to registration as voters in the precinct in which they registered as such, or because their registration did not comply with the law in other respects, the proper proceeding should have been taken to purge their names from the rolls. Both the Constitution and the enactments of the Legislature contemplate direct proceedings against a voter to strike his name from the rolls, except, of couse, when it appears that the voter has died, or it appears that since his registration he has been convicted of a felony, or has been declared insane. Section 5, art. 8, Constitution of 1921; sections 8, 9, 11, 12, and 13 of Act No. 122 of 1921.

"Were we to give our sanction to the attack here made, we could do so only by ignoring the methods provided by law for purging the rolls, and by permitting what is equivalent to a collateral attack upon the registration of the voters in question, which, of course, we cannot do. See Turregano v. Whittington, 132 La. 454, 61 So. 525, and Smith v. Police Jury, 125 La. 731, 51 So. 703."

True enough, this reasoning seems to be in conflict with the views expressed in Marrero v. Middleton et al., 131 La. 372, 59 So. 791; Marrero v. Middleton et al., 131 La. 432, 59 So. 863, and Edrington v. Chenet, 131 La. 439, 59 So. 866, in all of which cases the court permitted an investigation, after election, into eligibility of persons who had voted, or who had desired to vote in the election, and in the second of which cases, on page 434 of 131 La., 59 So. 863, 864, the court said:

"We hold in our former judgment that the objections to evidence attacking collaterally the registration of particular voters were properly overruled by the trial

judge as to qualifications necessary for registration; and we now adhere to that ruling. We also hold in our former opinion that under the primary statutes of this state a candidate does not lose his right to object to illegal votes because he did not challenge the voters at the polls. * * *"

However, it must be remembered that the last three cases to which we have referred were all decided prior to the adoption of the Constitution of 1921 and before the passage of Act No. 122 of 1921 (Ex. Sess.) and of Act No. 97 of 1922, the purpose of which enactments, so far as the point now under discussion is concerned, seems to be to require that illegal registrations be erased by direct action prior to election and not by collateral attack afterwards. The case of Perez v. Cognevich, supra, was, on the other hand, decided in April, 1924, after the various enactments of 1921 and 1922 became effective, and, as appears from the above quotation from that decision, was largely based on those enactments.

If we are correct in this view, it follows that, since the attack on the eligibility of Ordineaux is directed at the fact that, many months prior to the election, he had removed from the precinct in which he later voted, such an attack cannot at this time be considered.

Thus, the question raised by the reconventional demand is disposed of, at least to our own satisfaction, and we shall now address ourselves to the controversy presented by the main petition.

At the very beginning of the consideration of this question, our attention naturally focuses itself upon section 5 of article 8 of the Constitution of 1921, because it is that section which provides the method by which a name illegally registered may be stricken from the rolls, as well as the method by which a qualified elector, illegally denied registration, may obtain redress.

If, then, as we have held, no objection to an illegally registered voter may be made collaterally and after election, it would seem logical to apply the other provisions of the same section to a collateral attempt to count, after election, an uncast vote of a person whose name was not on the rolls.

But, whether such collateral effort to count a vote not actually cast may be made, it is not essential that we determine, because after a consideration of the facts pertaining to the qualifications of Poche, we have come to the conclusion that he had lost his status as a qualified elector in ward 1 of St. James parish, and that the registrar of voters was within his rights and was performing his ministerial duty in removing the name from the registration rolls of that ward.

It satisfactorily appears from the evidence that, although Poche had, for some years, resided in ward 1, he had, more than three months prior to the primary election of February 23, 1932, removed to another ward in the same parish with the intention of residing in that other ward.

Exactly when the removal was effected is difficult to ascertain, but that it was more than three months before the date of the said primary seems certain.

Act No. 122 of 1921 (Ex. Sess.) is a general statute governing the qualifications of voters and providing for their registration, and in that statute, in section 10, it is provided that, "in order to be registered as a voter, a person shall have been an actual bona fide resident * * * of the precinct in which he offer to vote, three months next preceding the election."

It also appears from the last paragraph of section 10 of that act that, after Poche had removed from ward 1, he could, after a delay of 30 days, have registered in the new ward to which he had removed. He was, therefore, not deprived by the action of the registrar of the right to vote. He was merely required to register in the other ward to which he had removed and to cast his vote there.

But, says Cambre, the registrar had no right, without a hearing, to erase Poche's name, which, admittedly, had been originally properly placed on the registration rolls of ward 1, and he bases his argument that the registrar had no right to remove the name without notice and without a hearing on the fact that, under sections 8 and 9 of Act No. 122 of 1921 (Ex. Sess.), notice and hearing are required before erasure of a name from the rolls.

Section 8 provides a method by which any two bona fide electors may initiate proceedings looking to the removal of an alleged illegally registered person.

Section 9 provides a method by which the registrar may himself initiate such proceedings.

It is true that in both of these sections it is provided that notice shall be given, and that hearing shall be had, but section 18 of the act was inserted in order to provide a method by which a registrar, within 30 days next preceding an election, may, even without notice and without hearing, on his own motion, erase a name which he has reason to believe is illegally on the rolls.

We see no conflict between sections 8 and 9 on the one hand and section 18 on the other. Nor do we agree with counsel for Cambre that section 18 is intended merely as a summary or restatement of the provisions of the other two mentioned sections. Section 18 seems intended to serve a special purpose when there is no longer time for the formal notice and hearing provided for in the other methods set forth in sections 8 and 9. The erasure here was admittedly made exactly 30·days prior to the primary election.

That in some cases such power as is thus conferred upon the registrar may lead to abuse cannot be denied, but it appears here that there was no such abuse, since we find from the record that Poche himself had verbally informed the registrar of his removal to the other ward, and, although it is conceded that he did not, along with the giving of this information, make a request for transfer of registration, the purpose of informing the registrar of removal could only have been to assist in maintaining the correctness of the registration records.

Since the registrar had the right to remove the name of Poche, and since Poche took no steps to reinstate his name, and since, even if such steps had been taken, it appears that, as a result of his prior removal, his efforts should not have been successful, it follows that the vote which Poche says he would have cast for Cambre cannot be added to the total.

In passing, we remark that defendant's contention that it is not proper, in such cases, to place upon the witness stand parties who were denied the right to vote, in order that they may testify as to how they intended to vote, does not seem to be well founded in view of the decision of our Supreme Court in the two cases of Marrero v. Middleton et al., supra, and in the case of Edrington v. Chenet, supra.

A rejection of both the demand of plaintiff and of that of the defendant and plaintiff in reconvention leaves the promulgation

of the parish committee unaltered and shows that the primary election resulted in an even vote, 187 for each candidate.

Our attention is not directed to any constitutional or statutory provision pointing out a course to be followed where, by reason of an equal vote for each candidate in a second primary, neither is nominated. In section 31 of Act No. 97 of 1922, which is the general primary election law in force at this time, it is required that, where a contest pending in court "shall not be finally decided in time to print the name of the nominee of the party upon the ticket at election, then the political party committee shall certify the name of the person who is the contestee in the suit filed."

It is evident that that section can be of no assistance here, for we have no means of knowing whether there is time for the purpose mentioned to be accomplished, and, even if we had such knowledge, surely a court before which such a contest is pending could not apply such a provision and thereby avoid a decision of the matter. Furthermore, that portion of section 31 did not contemplate a situation in which neither of the parties to the suit had been declared nominee by the party committee. It is easy to understand the reason for declaring that, where one person had been declared nominee and his right has been challenged, but there is not time for final judicial action, the contestee who has been named by the committee should be the standard bearer of the party. But such reasoning has no foundation where neither has been selected.

In the absence of a showing that there is not time, before the general election, for the holding of another primary, we deem it in conformity with the spirit and purpose of the primary laws of the state that an-

other primary be held. In this view we agree with what, in a situation somewhat resembling this, was said by Judge Odom, then of the Second Circuit Court of Appeal, in Parker v. Democratic Executive Committee of Franklin Parish, 5 La. App. 712, when, in ordering another primary, he, as organ of the Court of Appeal for that circuit, said:

"Considering the returns made by the commissioners and all the testimony in the record," it is "utterly impossible for the court to determine which of the candidates was nominated.

"The underlying principle of all elections is to ascertain the will of the majority.

"Where * * * it is impossible to ascertain this will the matter should be referred back to the voters."

### DECREE

The judgment appealed from in so far as it rejects the reconventional demand is affirmed, but in so far as it is in favor of plaintiff, Elize Cambre, ordering the certification of his name as Democratic nominee as justice of the peace for ward 1, St. James parish, it is annulled, avoided, and reversed, and his suit is now dismissed at his cost.

PER CURIAM. The suggestion contained in our opinion in this case, to the effect that a third primary may be necessary, was inadvertent, and we desire to retract it because of its possible misleading character. That issue was not before the court.