ROGERS, Justice.
 

 This is á suit involving the Democratic nomination for the office of Sheriff of the Parish'of Iberia. The suit was brought under the provisions of Act 97 of 1922, as amended, generally known as the “Primary Election Law.” An exception of no cause of action was sustained and plaintiff has appealed from the judgment.
 

 The judge of the district court, in a well considered opinion, has correctly stated and disposed of the numerous points at issue between the parties. In order to better comply with the law requiring that cases of this kind must be promptly decided, we have concluded to adopt his opinion and make it our own. The opinion reads as follows:
 

 “Plaintiff, Paul Anthony Landry, and defendant, Gilbert Ozenne, were opposing candidates for the Democratic nomination for the office, of Sheriff of Iberia Parish at a second primary election held on February 20, 1940.
 

 “On February 24, 1940, the newly elected Parish Democratic Executive Committee, but whose authority to act in the premises is questioned by the plaintiff, met and promulgated -the returns of the second primary election, and, on the face of the returns, declared the defendant, Gilbert Ozenne, the nominee for said office, this by a majority of 45 votes.
 

 “Plaintiff has brought the present suit against defendant, Gilbert Ozenne, the Iberia Parish Democratic Executive Committee, which is referred to as the ‘Incumbent Parish Committee,’ as well as the Iberia Parish Democratic Executive Committee, which is referred to as the ‘New Parish Committee,’ contesting said second primary election upon various grounds, and, in the alternative, to have said election declared illegal, null and void.
 

 “Plaintiff prays for a recount of certain ballots cast at said election and, after the recount, to be declared the nominee for the office of Sheriff.
 

 “To this petition, defendant and contestee filed an exception of misjoinder of parties defendant, a motion to strike out certain pleadings of the petition, and an exception of no right and of no cause of action, together with his answer, being-a summary proceeding. The newly elected Parish Democratic Committee filed a plea, of estoppel, exception of misjoinder of parties defendant and that of no cause- and no right of action.
 

 “The petition of contestant, being quite-lengthy, makes ■ the following- charges,, which I shall endeavor to summarize as. briefly as possible:
 

 
 *862
 
 “First, that the returns of -the various clerks and commissioners of election from the various precincts and wards are inaccurate, erroneous and false, and that, had an accurate and legal return been made, it would have shown that plaintiff received a clear majority of all the legal votes cast;
 

 “Second, that in thirteen named precincts a number of ballots, or more, which were spoiled, were counted for defendant, and that accordingly the total vote received by contestee would have been reduced to that extent, had they been properly rejected;
 

 “Third, that in Precinct 1 of Ward 3, six ballots' were called off and credited to defendant which had been actually cast for plaintiff;
 

 “Fourth, that in Precinct 1 of Ward 8, one absentee vote, specifically the vote cast by Maude Trappey, was not counted, though she was qualified;
 

 “Fifth, that in Precinct 2 of Ward 8, two absentee votes were not opened or counted, which were cast in his favor by Albert Desonier and one-Dejean, who were in turn qualified voters;
 

 “Sixth, that in all of the precincts and wards teferred to in the preceding articles, ballots were called off and credited to defendant and contestee that had been actually cast for plaintiff;
 

 “Seventh, that at Precinct 1 of Ward 5, forty persons, and at Precinct 2 of Ward 5, thirty-five persons, non-resident and unqualified voters, were permitted to vote, of which fully thirty in the first instance and fully twenty-five in the second instance voted for defendant and contestee;
 

 “Eighth, that in Precinct 1 of Ward 5, more than one hundred persons, and in Precinct 1 of Ward 7, approximately two hundred and fifty persons received assistance by two commissioners representing defendant in the first instance and by one commissioner representing defendant in the second instance, without the supervision of a commissioner representing plaintiff.
 

 “Ninth, that in Precinct 1 of Ward 5, commissioners detached the numbered slips from the ballots prior to the actual voting;
 

 “Tenth, that at said election, general misconduct and illegal procedure were engaged in by unauthorized persons acting as commissioners and by acts of intimidation, undue influence and illegal and improper electioneering by various persons interested in the candidacy of the defendant and contestee;
 

 “Eleventh, that at Precinct 2 of Ward 8, the polling booths were not properly arranged in that no canvas was placed thereon, resulting in a delay of one hour in the opening of the polls, thereby resulting in several persons leaving the polls without voting at that time;
 

 “Twelfth, that the official tally-sheet compiled by the election commissioners in Precinct 7 of Ward 6 was not forwarded to the Chairman of the Iberia Parish Democratic Executive Committee, and that the tabulation and promulgation is illegal, null and void;
 

 “Thirteenth, that in Precinct 1 of Ward 5 and at Precinct 5 of Ward 6, the official,
 
 *864
 
 ballots reached the commissioners in broken packages.
 

 “Petitioner further alleges that the counting and crediting of spoiled ballots, and the miscalling and crediting of ballots in favor of defendant warrants the opening of the ballot boxes and a recount thereof.
 

 “In the alternative, he alleges that, because of the improper procedure, irregularities and illegal and improper conduct, the returns of Precinct 1 of Ward 5, Precinct 5 of Ward 6, Precinct 1 of Ward 7 and Precinct 2 of Ward 8 should be invalidated and rejected and, in the further alternative, that the entire election be annulled and rescinded, and that the proper Parish Democratic Executive Committee be commanded to order another election.
 

 “Act
 
 97
 
 of 1922, Section 27, as amended by Act No. 28 of 1935, 2d Ex.Sess., § 1, provides: ‘ * * * or if it be a municipal, parochial or district office, then to the District Court of the parish in which the contestee resides, which petition shall set forth specifically and in detail the grounds on which the contest is based and the irregularities or frauds of which complaint is made; * *
 

 “I shall hereafter deal with the complaints and charges in their sequence as hereinabove stated.
 

 “I find thirteen articles of the petition devoted to the alleged irregularity of spoiled ballots being counted and credited to the defendant and contestee.
 

 “Each of these articles, irrespective of dealing with thirteen different precincts, and irrespective of the greater and lesser number of ballots stated therein, in theii phraseology are identical. The verbiage therein used is in the category of stereotyped averments.
 

 “Petitioner starts out and declares that in a certain named precinct, a certain number of ballots, or more, were spoiled. Needless to say, such an averment is a conclusion of the pleader. This was clearly so held in the case of Lafargue v. Galloway, 184 La. 707, 167 So. 197. The reasons in support of this conclusion read as follows : ‘By reason of visible erasures, improper marking, defacement, mutilation, or by reason of being marked in ink, marked with a check mark, a circle, or an irregular mark, or marked outside the square or proper place, or by reason of being torn or otherwise marked, or by reason of various other irregularities and illegal ways adopted by the voter to mark a ballot; * *
 

 “The Courts, on numerous occasions, have reviewed our primary election statute, supra, and have prescribed what requirements are essential to state a cause of action. There are many reasons, with which I shall hereafter deal, which require a pleader to state specifically, and in detail the irregularities complained of. The conciseness and precision of a petition seeking to go behind the returns of election officers must clearly appear, for it is universally accepted that the opening of ballot boxes and the recounting of ballots is a perilous experiment. Not only does our jurisprudence command this requirement, but the statute, supra, itself so commands.
 

 
 *866
 
 “In. a reading of these numbered articles relative to spoiled ballots, we find no-specific or precise reason given that these ballots were spdiled, nor is there a definite number so fixed. Plaintiff simply contents himself with charging every possible and conceivable manner in which a ballot may be spoiled. He does not state that a given number of ballots were spoiled for a given reason, but charges that the ballots were spoiled for every conceivable alternative reason. The effect of such a general charge is that he believes, if these ballot boxes were opened, that upon a recount, he may or may not find ballots to fit the blanket and all-embracing causes alleged by him. By the use of this all-embracing language, he contents himself with the hope that such may or may not be true; that he shall either have a gain or a loss, depending upon whether or not any particular ballot may fall within the all-embracing sphere he has fixed. Our jurisprudence demands that a contestant, if he knows of a certain fact, that he shall so state. Certainly, if plaintiff knew of any specific ballots being spoiled for a specific reason, he should have so stated and not rely upon language which would cover every conceivable means of irregularity. When resort is had to such all-embracing language, with the hope that the ballot may fit one of the particular patterns charged by him, he does nothing more or less than state to the Court ‘certain ballots are spoiled because of irregularities and illegalities.’ The sum and substance of the language he has used is nothing but generalities. He conveys- to the Court the averment that, if a certain ballot is not spoiled for one reason, it may or may not be spoiled for some other reason, and this, ad infinitum.. Such language as plaintiff has used in these charges now-being dealt with are, to say the least, speculative, and only give rise to a mere suspicion and ultimately present a matter purely problematical.
 

 “As previously stated, the Courts frown upon loosely drawn charges of misconduct on the part of election officers and every consideration of public policy should influence the Court -to be cautious before ordering the opening and recounting of ballot boxes. It is universal that there must be that fullness, that particularity, that conciseness of specific charges, and that, in detail,- to warrant the Court in proceeding along such a perilous expedition. This is so for the additional reason that there is a universal prima facie presumption of the correctness and regularity of official action.
 

 “In the case of Lafargue v. Galloway, supra, the Court stated [184 La. 707, 167 So. 198]: ‘It is well-established law in this state, as well as elsewhere, that, to contest an election, not only specific frauds or irregularities must be alleged, but it must also be shown that the. frauds or irregularities charged did in fact alter the result,’ the Court further stating: ‘Likewise, the allegations of paragraph 28 of the petition, that petitioner was deprived of 7 votes in precinct 37, because these votes were “legally cast for your petitioner that were wrongfully and illegally spoiled and thrown out and not counted,” is a mere conclusion of law, as plaintiff fails to al
 
 *868
 
 lege any fact showing that the action of the commissioners in declaring the- same spoiled was wrongful and illegal.’
 

 “In the case of State ex rel. Todd v. Mills, 191 La. 1, 184 So. 350, 353, the Court, after stating that there must' be specific allegations of error or mistake made by the commissioners, specific facts or circumstances on which a plaintiff and contestant bases his assertions, stated: ‘These commissioners are sworn officers, and their duties are specifically prescribed. The returns which they make under oath, showing the results of an election are presumed to be correct and are entitled to respect. In the absence of specific allegations of fraud, mistake, error or misconduct, the returns which they make will not. be inquired into by. courts on the blanket, vague and indefinite allegation that they “incorrectly and irregularly” counted and tabulated the votes.’
 

 “The Court in that instance cited the case of Edwards v. Logan, a Kentucky case reported in 69 S.W. 800, where grave errors were charged, and which was held not sufficient to show a cause of ..action. The Court in that instance saying: ‘The primary election law says that one who desires to contest an election shall present a petition to ’the court setting forth “specifically and in' detail” the grounds on which the contest is based, and our decisions are uniform to the effect that general charges of fraud, • mistake, intimidation; irregularities; etc., will be disregarded. If a contestant has a solid legal basis for complaint, he can readily state the specific facts'on which he-bases his complaint. .A petition in which the complaints are couched in general terms can be regarded in no other light than as a mere fishing expedition which courts do not countenance.’
 

 “In the case of McNeely v. Speight,
 
 7
 
 La.App. 719, where a person, who is alleged to have voted, had been convicted of a crime and thus disqualified, the court maintained an exception of no cause of action because plaintiff had failed to allege that the voter had not been pardoned with restoration of his right of franchise.
 

 “In the case of State v. Michel, 121 La. 374 [46 So. 430, 432] the language of the court in that instance is peculiarly applicable here, the court stating: ‘Hence plaintiff’s industry in mustering 21 [charges] would give rise to a suspicion that, having no very great confidence in any one of his grounds being “clear, complete, and unmistakable,” he had sought to make up by quantity what might be lacking in quality. * * * ’
 

 “In the. case .at bar, plaintiff having resorted to every conceivable method whereby a ballot might be spoiled' in an effort to show a cause of action, clearly shows that he has no confidence or certainty in any one of these grounds. He does not state in a clear, definite, fixable and. unmistakable manner why certain ballots therein numbered by him are spoiled. He spreads a blanket over the entire subject-matter with the hope that it might warrant the opening of the ballot boxes. Not knowing any.specific facts, he has not so charged, and, having failed, so to do, the Courf will not countenance such averments as.,stating a 'cause of action. See
 
 *870
 
 Livaudais v. Leovy, La.App., 193 So. 613, decided on February 12, 1940.
 

 “In McCrary on Elections, 4th Ed., Section 435, we find the following: ‘An application for a recount of the ballots cast at an election will not be granted unless some specific mistake or fraud be pointed out in the particular boxes to be examined'. Such recount will not be ordered upon a general allegation of errors in the count of all and giving particulars as to none of the boxes * * *. There must be charges of mistake or fraud sufficiently precise to induce the Court to entertain the complaint, and that a general allegation of errors believed to exist was not enough to authorize the...perilous experiment of testing the election return by the result •of a recount.’
 

 “Article 29 of plaintiff’s petition charges that ■ ‘ballots were called off and credited to defendant and contestee that had been cast in favor of petitioner herein.’ Such allegations are clearly generalities, without specific facts as to how many were so counted and credited, and which in itself fails to meet the requirements of law.
 

 “Articles 30 and 31 allege that a- total of seventy-five persons in two precincts cast their ballots who were not qualified electors in said precincts for the reason that some were non-residents and others were under the age of twenty-one years. These charges state no cause of action, and this, for three reasons. First, plaintiff fails to..state the names of the persons alleged to have voted; secondly, his remedy was by purging of the registration rolls and not be a collateral attack as is here adopted; and, thirdly, he makes no allegation that these votes were challenged and a proper protest made in connection therewith.
 

 “In Thornhill v. Wear, 131 La. 479 [59 So. 909], the Court held, quoting from the syllabus: ‘In a contest of a primary election, the pleading of the contestant should allege not only the number of illegal votes cast, but should allege by whom they were cast, and the reason, as applied to each voter, that his ballot was not legal.’
 

 '“In Perez v. Cognevich, 156 La. 331 [100 So. 444, 446], the Court held: * ’* Plaintiff, in order to show that these persons were without right to vote in the election, if such were the case,, should have alleged, in his petition, their names and the reasons why they were without right to vote therein.’
 

 “The Court further holding: ‘Were we to give our sanction to the - attack here made, we could do so only by ignoring the methods provided by law for purging the rolls, and by permitting what is equivalent to a collateral attack upon the registration of the voters in question, which, of course, we cannot do. ■ See Turregano v. Whittington, 132 La. 454, 61 So. 525, and Smith v. Police Jury, 125 La. [724] 731, 51 So. [701] 703.’
 

 “In the case of Cambre v. Brignac, [19 La.App. 437] 140 So. 702, .it .was held, quoting from syllabus: ‘In primary election case where vote cast by person was counted and his right to vote was never before challenged, it.cannot.be collaterally
 
 *872
 
 attacked in court.’ (See Marrero v. Middleton, 131 La. 432 [59 So. 863]).
 

 “In Bradley v. Neill [174 La. 702] 141 So. 382, the Court held: ‘In absence of 'challenge when commissioners deposited ballots of persons who voted at home, such ballots could not be protested in election contest.’,
 

 “The ground of complaint in Article 32 of plaintiff’s petition that more than one hundred voters in one precinct, and in Article 33, that approximately two hundred and. fifty illiterate voters were assisted by a commissioner or commissioners of defendant,' without the supervision of plaintiff’s commissioners, likewise fails to state a cause of action. In that instance, plaintiff admits that he had representation as commissioners at said precincts. He makes no allegation as to how these voters voted. It could be as equally said that these votes were cast in his favor. He makes no allegation of fact to show that these commissioners committed a fraud. There is no allegation that this method of casting ballots was even protested as irregular, yet he having commissioners at the polls who were charged with the official conduct of said election- and who are presumed to have acquiesced in the conduct thereof as being acceptable and not in fraud of either candidate, or of the rights of the voter in freely expressing himself. Nor does he allege that the commissioners who assisted the voters at their requests, fixed the ballots contrary to the free expression and wish of the voters. He relies on the general charge that, because voters received .assistance, as charged by him,, that that in itself prevented a free expression of the electorate. Such averments are purely conclusions on his part, without any specific facts to show any design or conspiracy on the part of the election officials, thereby defeating a free expression of the electorate as the law contemplates. The mere general averment of that nature does not necessarily lead to the perpetration of a fraud and thus .invalidate an election.
 

 “Under Article 34-A, plaintiff alleges the removal, by the commissioners, of the numbered slips prior to the voter having marked his ballot. He does not state therein the number of votes that were so cast, or whether this procedure was conducted by his commissioners or that of defendant; nor does he state that he was deprived of any particular number' of votes so cast so as to have changed the results of the election. There is no specific allegation of fact which would have the Court declare on its face that such was fraudulent, nor is fraud charged. He simply declares that these votes, with no number given, were illegal and therefore prevented a free expression of the electorate.
 

 “Such allegations are not sufficient to state a cause of action, but purely conclusions and generalities, which are not acceptable under our law. There is a presumption that these election officials representing both candidates were fully cognizant of these facts, and that their conduct in so doing was not frauduent, or an attempt on their part to defeat the free expression of the electorate.
 

 
 *874
 
 “The officials charged with the conducting of an election are merely the agents of the electors who participate and the candidates, and whose duty it is to facilitate the electors in the free and fair expression of their will, and, in the absence of specific facts giving rise to fraud, or a denial of that free expression, the Courts should not set at naught the will of the electors as expressed. The failure to have followed each and every formal direction prescribed for their guidance, unless accompanied with a denial of that free expression by the electorate should not be entertained. (See Andrews v. Blackman, 131 La. 335 [59 So. 769]; Heine v. Police Jury [172 La. 889] 135 So. 667.)
 

 “In the case of Wright v. Heflin, 155 La. 765 [99 So. 592], it was held, quoting from the syllabus: ‘That the commissioner who handed out the ballots in an election for nomination for sheriff tore off the detachable slip bearing the number of the ballot as the ballot was handed to the voter instead of detaching it when the voter had marked his ballot and returned with it to be deposited in the box held not to require the returns from that precinct to be thrown out; there being no fraud, and the commissioner acting under a mistake as to the proper procedure, so that a protest, if one had been made, against the detaching of the ballot numbers, would probably have been heeded.’
 

 “I might add that, in the case at bar, plaintiff was represented by commissioners, and he makes no allegations that his representatives ever protested or challenged such conduct.
 

 “Article 34-B contains purely general averments of ‘acts of intimidation, undue influence and improper electioneering.’ There are no specific facts accompanying this legal conclusion on the part of the pleader.
 

 “In the case of State v. Mason, 14 La. Ann. 505, the Court held, quoting from syllabus: ‘In a suit contesting an election on account of violence used in keeping voters from the polls, it should be alleged that there was a sufficient number prevented from voting to have varied the result; and the absence of such material allegations is fatal to the suit.’
 

 “Articles 35 and 36 refer to the polling booth arrangement in a particular precinct, in that canvas had not been placed to warrant secrecy, and that this disarrangement brought about a delay because the polls were not opened until 7 o’clock.
 

 “Plaintiff concedes, in his averments, that this disarrangement was rectified during this delay, hence warranting the secrecy of the ballot. He alleges that, because of this delay, it acted as a discouragement of certain persons from voting and a deprival of those persons of their vote. He fails to allege that which I consider is material in that, though they left the polling booth at that particular hour, they did not return and cast their ballot. He does not state how many persons became discouraged by this inconvenience and left the polling booth. I cannot assume, under that state of facts that, because of the discour
 
 *876
 
 agement caused by the delay of one hour, if true, that the voter did not return to cast his ballot at some subsequent hour. Plaintiff does not so state. There is no fact of fraud charged, and whatever inconvenience may have been occasioned, though rectified within a reasonable time, I cannot assume that this inconvenience would occasion only those voters who had to vote for plaintiff to leave whilst those of défendant’s choice remained. There is nothing therein which on its face would show a fraudulent denial, specifically and clearly, of a free expression of the will of the electorate of that precinct.
 

 “In Wright v. Heflin, supra, it was held: ‘That the polling place at an election for nomination as sheriff was closed by the commissioners during 'the noon hour was not, of itself and without proof that any voter was denied the right to vote, a good cause for annulling the election at that precinct or for throwing out the returns.’ (See Heine v. Police Jury, supra, and Womack v. Nettles, 155 La. 359 [99 So. 290]).
 

 “Article 37 of the petition charges the failure of the commissioners in a named precinct to have forwarded to the Parish Democratic Committee the official tally-sheet and official election returns and, because of that fact, the returns as promulgated from said precinct should be nullified.
 

 “Plaintiff fails to state that the commissioners fraudulently, or even incorrectly, tabulated the returns of that precinct, nor does he charge a tabulation and promulgation by the committee in fraud of his rights, nor that the results of the election would have thereby been changed, had they been properly tabulated. These broad averments in themselves are not sufficient to have this Court conclude that a free expression of the electorate was denied and thus a cause of action stated. The provisions of our primary law in that respect are directory and, in the Heine case, supra, the Court held .that the failure of election officers to deliver duplicate tally sheet and compiled statement to Clerk of Court would not render the election invalid. (See Hunt v. Sims [184 La. 679] 167 So. 188; Vidrine v. Eldred, 153 La. 779 [96 So. 566]; Andrews v. Blackman, 131 La. 355 [59 So. 769]).
 

 “Article 38 of plaintiff’s petitio'n contains the general charge that, in two precincts, the official ballots were delivered to the commissioners in broken packages and which ‘afforded an opportunity for fraud and irregularities.’ A reading of this article will clearly show a failure on the part of plaintiff to specifically state a fraud having been committed, or that the voters were denied a free expression of their will because of that fact. Such general averments are based purely on suspicion and without some specific fact which our statutes and laws command. A contest based upon such generalities cannot be entertained. (See Act 97 of 1922, Section 27, as amended; Womack v. Nettles, supra; Heine v. Police Jury, supra; Wright v. Heflin, supra.)
 

 “Other than articles 14, 22 and 24 of plaintiff’s petition, I must conclude that plaintiff’s petition discloses no cause of ac
 
 *878
 
 tion. In the three numbered articles, however, relative to six votes in one precinct being called off and credited to defendant, whereas said ballots had actually been cast for plaintiff, one absentee vote in one precinct and two absentee votes in another precinct being rejected, though qualified to vote, if these errors as charged, and which in themselves state a cause of action, be rectified, it would result in nine votes being cast for plaintiff, together with a reduction of six votes in defendant’s majority, or a total of fifteen votes. Plaintiff, however, would still be short of thé nomination because, by deducting the fifteen votes, it would still leave defendant a majority of thirty votes.
 

 “It is axiomatic that the irregularities charged would in fact alter the result of the election, before a contest can be entertained.
 

 “In view of the conclusions which I have reached, there is no necessity for me to inquire into the merits of the other exceptions, pleas and motion filed by defendants.
 

 “For these reasons, the exception of no cause of action filed by the defendant and contestee is hereby sustained and plaintiff’s suit is dismissed at his costs.”
 

 Plaintiff argues that the cases of Lafargue v. Galloway, 184 La. 707, 167 So. 197, cited by the judge of the district court in support of his opinion that plaintiff’s allegation concerning the counting of spoiled and identified ballots was a mere conclusion of the pleader, and Todd v. Mills, 191 La. 1, 184 So. 350, 354, cited by the judge of the district court in support of his opinion there must be not only allegations of error or mistake by the commissioners, but also that such allegations must be specific, are not applicable to this case. Plaintiff’s argument is not tenable. Both cases, as we read the opinion handed down in each of them, are entirely appropriate for the purpose for which they are cited in the opinion of the district judge. As shown in the opinion of this Court in Todd v. Mills, the primary election law itself (Section 27 of Act 97 of 1922, as amended) provides that a candidate desiring to contest an election must present a petition to the court setting forth “specifically and in detail” the grounds on which his contest is based. This Court further said in the opinion that “our decisions are uniform to the effect that general charges of fraud, mistake, intimidation, irregularities, etc., will be disregarded. If a contestant has a solid legal basis for complaint, he can readily state the specific facts on which he bases his complaint. A petition in which the complaints are couched in general terms can be regarded in no other light than as a mere fishing expedition which courts do not countenance.”
 

 But plaintiff contends the allegation that a certain number of ballots have been spoiled and improperly marked so as to be susceptible of identification is sufficient, and that the pleader is not required to state how the various ballots were in fact spoiled. Plaintiff’s contention can not be sustained in view of the provisions of the primary election law requiring that the grounds on which an election is con
 
 *880
 
 tested must be set forth “specifically and in detail." If a contestant is unable to do this he has no standing in court to contest the election of which he complains. And plaintiff has not met the requirement of the primary election law by enumerating in his petition almost every conceivable method by which a ballot may be spoiled or identified and by reciting almost every conceivable irregularity which may occur in a primary election.
 

 It can not be disputed that elections are conducted by duly appointed and sworn election officials and not by the courts. These officials are presumed to do their duty. Their official acts are entitled to respect. In the absence of specific allegations of fraud, mistake, error or misconduct, the returns which they make under oath, showing the results of an election, will not be inquired into by the courts. Plaintiff does not allege that he was not represented by commissioners or watchers at the polls or that his representatives, or any one else for that matter, lodged any protest against the counting of any spoiled and identified ballots or against any irregularities occurring at the polls. Plaintiff does not charge the election officials with having committed any fraud or that they were influenced by any improper motives, nor can his allegations touching upon their conduct be construed as amounting to the commission of fraudulent acts or improprieties resulting in the election of the wrong candidate.
 

 There is nothing in plaintiff’s allegations that any defeated candidate could not set up after’ his defeat arid thereby throw an election into the courts. If this were permitted it is easy to see that in every case in which a candidate was defeated by a small margin of the votes, two elections would inevitably be held — one at the polls and the other in the courts. Before a candidate in a primary election can be heard in the courts to attack the returns of the election, he must' show by the clearness and particularity of the allegations of his petition that he has been deprived of the nomination by the fraudulent or wrongful acts of the election officials. To hold otherwise, would do violence not only to the provisions of the primary election law itself, but also to the interests of the voters, who have even a more vital stake in the result of an election than the candidates themselves.
 

 The cases of Jones v. Stephens, 185 La.
 
 79,
 
 168 So. 500, and Dutel v. Domingues, 166 La. 301, 117 So. 232, are referred to by plaintiff as presenting situations similar to the one in this case. This is not correct. In the Jones case the basis of the contest was an alleged conspiracy, composed of certain named and unnamed persons, which was formed for the purpose of coercing the election commissioners and intimidating and corrupting the electors to the prejudice of the contestant, who would otherwise have been the nominee. The Dutel case was not decided on an exception of no cause of action challenging the sufficiency of plaintiff’s allegations. That case was submitted and decided wholly on the merits.
 

 Thornhill v. Wear, 131 La. 479, 59 So. 909, is cited by both plaintiff and defendant. The decision is cited by defendant as au
 
 *882
 
 thority for the proposition that in a contest of a primary election the pleading of the contestant should allege not only the number of illegal votes cast, but also should allege by whom they were cast and the reason, as applied to each voter, that his ballot was not legal. The decision is cited by plaintiff as authority for the proposition that in a contest of a primary election the contestant need not make his allegation as to ballots cast without detaching .the slips as specific, as required in the case of illegal ballots. These rulings were not made on an exception of no cause of action. They were made on objection to evidence offered in support of the contestee’s reconventional demand. The reason assigned by the court for the ruling that evidence was admissible as to the ballots that were cast without detaching the slips is, that those ballots were in the box and ordinarily the information is not within the reach of the pleader. It does not appear that the court in making the ruling took into consideration the provisions of the primary election law limiting the right of a defeated candidate to contest a primary election to those cases only where he is able to set forth “specifically and in detail the grounds on which the contest is based and the irregularities or frauds of which complaint is made.” Nor does the reason assigned by the court for making the ruling appear to us to be sufficient.' It may be true that such information might not be within the reach of the pleader while the ballots are in the box, but certainly that information comes within his reach when the ballots are removed from the box and counted by the commissioners. If the allegation is made while the ballots are in the box, necessarily it must be made because the pleader is assuming something that may not, as a matter of fact, be true. If, after the ballot box is opened and the count of the ballots is proceeding it should develop that some of the ballots were deposited in the box with the slips attached, information of that fact would be easily obtainable by a candidate through his representatives at the poll, and he would be in a position to give the details in his petition, provided the commissioners insisted on counting the ballots after they had been challenged by the candidate or his representatives.
 

 The appeal in the Thornhill case was prosecuted by the contestant and the judgT ment of the district court was set aside and the case remanded for a new trial. On the second trial the judgment of the district court was in favor of the contestant and the contestee appealed. This judgment was reviewed and set aside and plaintiff’s suit dismissed by this court. In its opinion the Court indicated that the evidence offered by the parties on the first trial, although inadmissible, was considered because it was not objected to by the parties. In referring to the first trial, this Court said, Thornhill v. Wear, 131 La. 739, at pages 747 and 748, 60 So. 228, at page 231, "of the opinion: “That trial was conducted from first to last — we mean from the filing of the original pleadings down to the conclusion of the evidence, and, indeed, of the arguments — upon the theory of the ballots being admissible in evidence. Acting upon
 
 *884
 
 that hypothesis, both parties m,ade allegations in their pleadings and admissions in the note of evidence which would now have to be disregarded, or, rather, which the court would not know how to deal with, if the ballots in these other boxes are to be left out of the computation. The thing is impracticable. And, were it feasible, this court would be powerless to now retrospectively reject this evidence. The judgment rendered in this case on the last appeal is res judicata of the admissibility of all the evidence considered and acted upon by the court on that appeal. Moreover, said evidence was received without objection. By what right, therefore, could this court reject it?” See Thornhill v. Wear, 131 La. 739, 60 So. 228. We are therefore unable to accept the ruling in the Thornhill case relied on by plaintiff as bearing on the issues involved in this case. This is so for another and insuperable .reason. Our examination of the extensive petition filed in this case fails to disclose any direct charge that ballots with attached slips were cast and counted for the contestee to the prejudice of the contestant, unless it be .that the contestant proposed or hopes to prove that fact under the vague and general allegation that it is one of the “various other irregularities and illegal ways adopted by the voter to mark (identify) his ballot and show how the voter voted,” which, of course, is not permissible^ under the express terms of the primary election law.
 

 Plaintiff, in his petition, questions the organization of the so-called New Parish Democratic Executive Committee as being premature and its tabulation and promulgation of the election returns as being unauthorized and of.no effect. Plaintiff does not allege that the Committee fraudulently or even incorrectly tabulated and promulgated the election returns. In the prayer, which is attached to his petition, plaintiff does not ask that the tabulation and promulgation of the returns be annulled on the ground that the Committee was prematurely organized and unauthorized to act. On the contrary, apparently acknowledging the authority of the Committee, plaintiff asks for the recount of the ballots cast in certain-precincts and, in the alternative, for the rejection of the returns in certain precincts for alleged irregularities occurring in those precincts, and that on those things being done that he have judgment not only -against the defendant contestee, but also against the New Parish Democratic Executive Committee, annulling its tabulation and promulgation of the primary election held on February 20, 1940, and declaring plaintiff to have been nominated as the Democratic Candidate for the office of Sheriff and Tax Collector of the Parish of Iberia. From which it is plain that plaintiff is not so much concerned with the authority of the New Parish Democratic Executive Committee to act as he is in securing a recount or rejection in court of certain ballots cast at the primary election and a revision in his favor of the tabulation and promulgation of the election returns as made by the Committee.
 

 It also would seem to be plain that if the allegations of plaintiff’s petition fail to disclose a cause of action, plaintiff is
 
 *886
 
 without interest to attack the organization and action of the Parish Democratic .Executive Committee.
 

 For the reasons assigned, the judgment appealed from is affirmed.