749 So.2d 840 (1999)
Bobby HIGGINBOTHAM, Plaintiff-Appellant,
v.
Earl MORRIS, Registrar of Voters, Tensas Parish, Ernest Sikes, Clerk of Court Tensas Parish, W. Fox McKeithen, Secretary of State for the State of Louisiana, Jerry M. Fowler, Commissioner of Elections for the State of Louisiana and Rickey A. Jones, Defendants-Appellees.
No. 33,506-CA.
Court of Appeal of Louisiana, Second Circuit.
December 8, 1999.
*841 Ike Spears, Michelle Andrina Beaty, New Orleans, Counsel for Plaintiff-Appellant Bobby Higginbotham.
Sheri Lynn Marcus Morris, Baton Rouge, Counsel for Defendant-Appellee W. Fox McKeithen.
Celia R. Cangelosi, Baton Rouge, Counsel for Defendant-Appellee Jerry Fowler.
Angie Rogers LaPlace, Frances E. Jones Pitman, Carlos Miguel Finalet, III, Baton Rouge, Counsel for Defendant-Appellee Earl Morris.
James Edward Paxton, St. Joseph, Counsel for Defendant-Appellee Ernest Sikes.
David Paul Doughty, Rayville, Counsel for Defendant-Appellee Rickey A. Jones.
Before BROWN, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This is an appeal from a judgment granting an exception of no cause of action in an election contest case. For the reasons that follow, we hold that the trial judge correctly sustained the exception of no cause of action, but erred in failing to give appellant, Bobby Higginbotham, an opportunity to amend his petition to sufficiently set forth a cause of action. Accordingly, we reverse in part, and remand to give Higginbotham 24 hours from noon, December 8, 1999, within which to amend his petition.

FACTS
On November 20, 1999, a run-off election was held for the office of Sheriff of Tensas Parish. The two candidates were Higginbotham and Rickey Jones. The election returns showed Jones receiving 2,082 votes, while Higginbotham received 1,777 votes. On November 29, 1999, Higginbotham filed a petition to contest the election.
The defendants to the election suit, in addition to Rickey Jones, were W. Fox McKeithen, the Secretary of State; Jerry M. Fowler, the Commissioner of Elections; Earl Morris, the Registrar of Voters for Tensas Parish; and Ernest Sikes, the Clerk of Court for Tensas Parish. In Paragraph X of Higginbotham's petition, he alleged that Morris, Sikes, and Jones "knowingly permitted, and in some instances participated in, many unlawful and irregular acts." Paragraph X then set forth the following list:
a. denial of absentee ballets to African-American voters for the November 20, 1999, run-off election although these voters had received absentee ballots for the October primary election;
b. failure to timely mail out absentee ballots to African-American voters who timely requested absentee ballots by mail;
c. denial of assistance to handicapped, illiterate and elderly African-American voters who needed it from a person of their choosing;
d. granting assistance to handicapped, illiterate and elderly white voters *842 who needed it from a person of their choosing;
e. opening of absentee ballots in the Registrar's Office prior to Election Day in violation of La. R.S. 18:1313(F)(i);
f. allowing a candidate for another office to be present in the Registrar's Office while absentee ballots were opened in violation of La. R.S. 18:1313(F)(i);
g. allowing the wife of a candidate to open the absentee ballots in the Registrar's Office in violation of La. R.S. 18:1313(F)(i);
h. denial of the absentee ballot requests of handicapped, elderly and infirm voters;
i. failing to include African-American voters on the list of qualified voters in spite of their proper and timely registration;
j. including white voters on the list of qualified voters who had not properly and timely registered;
k. harassing African-American voters during absentee voting and on election day in violation of La. R.S. 18:1461(a)(6);
l. failing to allow African-Americans to vote on the pretense that they were convicted felons;
m. failing to allow African-Americans to vote who did not have photographic identification and failing to offer them affidavits;
n. allowing white voters to vote even though they had no photographic identification; and
o. other unlawful acts to be shown at trial.
In addition to the allegations listed in Paragraph X, Higginbotham alleged that the actions of Morris, Sikes, and Jones, "and those in their employ," were in violation of federal statutes; and that Sikes, Morris, and Jones "engaged with other persons in a campaign to intimidate African-American voters."
Higginbotham concluded his petition by asserting that the actions of Morris, Sikes, and Jones and others resulted in voting irregularities of such a serious nature as to deprive the voters of the free expression of their will, and that the irregularities were so numerous as to affect the result of the election and make uncertain the will of the voters so as to require the election to be declared null and void. On December 2, 1999, Higginbotham amended his petition to add an additional paragraph stating that the combined actions of the defendants were sufficient to change the outcome of the election, and that but for the irregularities, Higginbotham would have been elected.
In response to Higginbotham's petition numerous exceptions were filed. Earl Morris, as Registrar of Voters, filed an exception of improper joinder because Morris was not a person against whom an election contest may be instituted. See La. R.S. 18:1401. The trial court granted this exception, and on appeal Higginbotham has not challenged the granting of this exception. Accordingly, the trial court's ruling on this exception is not at issue on appeal. See Rule 1-3 of the Uniform Rules of Louisiana Courts of Appeal.
Counsel for Ernest Sikes, the Clerk of Court, orally moved on the day of the hearing for dismissal of Sikes, based essentially on the same grounds raised by Morris. The court considered this as an exception of improper joinder, and the court granted the exception. Higginbotham does not contest the granting of the exception.
The trial court also granted exceptions of improper cumulation of actions aimed at Higginbotham's federal claims, and the trial court's granting of these exceptions is not contested on appeal.
The only issue raised on appeal concerns that portion of the trial court's judgment granting exceptions of no cause of action. Although the trial court did not issue written reasons for judgment, the court did *843 give oral reasons for judgment at the conclusion of the hearing on the exceptions. The court stated that the election law requires a petition in an election contest to set forth in specific detail the facts upon which the objection or contest is based, and also requires the petition to allege that, except for substantial irregularities or error, fraud, or other unlawful activities in the conduct of the election, the petitioner would have been elected. The court found that Higginbotham, in his amended petition, met the latter requirement. However, the court concluded that the acts listed in Paragraph X of the petition "which could possibly be construed as being specific enough to meet the criteria of the statute," did not allege facts that would establish that a sufficient number of votes were affected so as to change the outcome of the election. Thus, the court concluded that Higginbotham had not sufficiently alleged a set of specific facts and allegations to state a cause of action in the election contest suit.

DISCUSSION
The provisions of La. R.S. 18:1406(B) state:
The petition shall set forth in detail the facts upon which the objection or contest is based. If the action contests an election, the petition shall allege that except for substantial irregularities or error, fraud, or other unlawful activities in the conduct of the election, the petitioner would have qualified for a general election or would have been elected. The trial judge may allow the filing of amended pleadings for good cause shown and in the interest of justice.
In addition to these procedural provisions, the provisions of La. R.S. 18:1414 state that any procedural matter not specifically provided for in the Election Code shall be governed by the Code of Civil Procedure.
The requirement that a petition contesting an election set forth the factual basis in specific detail is similar to the requirement of La. C.C.P. art. 856 that in pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. The Official Revision Comments to art. 856 note that where factual particulars are required only in exceptional cases, a special rule must be adopted for these exceptional cases where the full circumstances are needed to afford adequate notice to the opposing litigant. The jurisprudence holds that when an objection is made that fraud is not pleaded with sufficient particularity, the objection must be addressed by an exception of vagueness, rather than by an exception of no cause of action. See Fabre v. Kaiser Aluminum and Chemical Corporation, 446 So.2d 476 (La.App. 4th Cir.1984).
In a similar vein, the jurisprudence on election contests states that a petition challenging an election must allege particularized instances of irregularities, fraud, or wrongdoing, in detail sufficient to permit the contestee to prepare a defense thereto. See Gremillion v. Rinaudo, 240 So.2d 237 (La.App. 1st Cir.1970). However, our jurisprudence indicates that general charges of fraud and irregularities are not sufficient to state a cause of action in an election contest suit. See Wayne v. Green, 389 So.2d 102 (La.App. 1st Cir. 1980); Garrison v. Connick, 291 So.2d 778 (La.1974); and Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755 (1958).
Part of the reason for the tendency in the jurisprudence to discuss lack of specificity in an election contest petition in terms of no cause of action may lie in the fact that such discussions can be traced to cases that predate both the Election Code and the Code of Civil Procedure. Nevertheless, when a plaintiff's allegations are so general that virtually any defeated candidate could set up such general allegations after his defeat and thereby throw an election into the courts, there are sound policy reasons for dealing with such general allegations via an exception of no cause of action. An exception of vagueness, as a *844 dilatory exception, may only be used to retard rather than defeat an action. Furthermore, as explained in Landry v. Ozenne, 194 La. 853, 195 So. 14 (La.1940), if very general allegations were permitted:
it is easy to see that in every case in which a candidate was defeated by a small margin of the votes, two elections would inevitably be heldone at the polls and the other in the courts.
The Landry court went on to explain that to not require clearness and particularity of the allegations would not only do violence to the provisions of the election law, but also to the interest of the voters who have even more of a vital stake in the result of an election that the candidates themselves.
Finally, no cause of action often may be an appropriate exception because cases involving less specific pleadings may also suffer from a failure to sufficiently allege that except for substantial irregularities, etc., the petitioner would have qualified for a general election or would have been elected. Without specific factual details, it would be difficult for a petitioner to allege, other than in an unacceptable, conclusory fashion, that the outcome of the election would have been different but for the irregularities. And if the petition does not sufficiently allege an effect on the outcome of the election, then the petition truly states no cause of action because the mere existence of irregularities is not a basis upon which to void an election. The instant case illustrates the point.
Petitioner in this case essentially relies on the listing of alleged irregularities in Paragraph X of his petition in order to satisfy the specificity requirement, and petitioner also relies on these alleged irregularities, taken as a whole, to satisfy the requirement of showing that the result of the election was affected because the irregularities were "so numerous." However, when one looks at the individual sticks composing the bundle of alleged irregularities, one sees that not a single alleged irregular act specifies the number of voters affected, and that some of the sticks in the bundle are of no help to petitioner in establishing that the results of the election could have been affected. We will now review each item in turn.
The first item on the list asserts that there was a denial to African-American voters of absentee ballots for the run-off election even though these voters had received absentee ballots for the October primary election. This allegation does not assert how many voters were affected, and does not assert that these voters were legally entitled to receive absentee ballots for the run-off election. This allegation also fails to indicate if any of the voters allegedly denied ballots were unable to vote in the election as a result.
The next item on the list alleges a failure to timely mail out absentee ballots to African-American voters who timely requested absentee ballots by mail. This allegation not only fails to assert how many voters, either specifically or approximately, were affected, but also fails to indicate that even one voter was unable to vote absentee as a result of the alleged untimely mailing. The mere fact that such ballots might have been mailed late does not mean that the voters did not receive them in time to vote absentee.
The third item on the list asserts a denial of assistance to handicapped, illiterate and elderly African-American voters who needed it from a person of their choosing. Once again, no numbers of voters or names of voters are provided, and there is no allegation that the denial of assistance resulted in the voters being unable to successfully vote. Moreover, under the provisions of La. R.S. 18:1434, an objection to an irregularity in the conduct of an election, which with the exercise of due diligence could have been raised by an objection at the polls to the procedure, is deemed waived. There is no indication in the petition that any objection was made at the polls to the alleged denial of assistance.
*845 The next item on the list is the alleged granting of assistance to handicapped, illiterate and elderly white voters who needed it from a person of their choosing. Obviously, this would not affect the proper vote count in the election, and is of no benefit whatsoever to petitioner.
We next come to an item alleging the opening of absentee ballots in the Registrar's Office prior to election day in violation of La. R.S. 18:1313(F)(i). This allegation carries no weight because without further alleging that the absentee ballots were miscounted as a result, the mere fact that they were opened prematurely would have no effect on the election's vote count.
In the next item, petitioner alleges that an irregularity occurred when a candidate for another office was allowed to be present in the Registrar's office while absentee ballots were opened in violation of La. R.S. 18:1313(F)(i). This item also carries no weight because it fails to indicate that vote totals were affected, and fails to suggest how vote totals possibly could have been affected simply by the presence of a particular individual in the Registrar's Office. The next item on the list similarly alleges that the wife of a candidate was allowed to open the absentee ballots in the Registrar's Office when these ballots were opened in violation of La. R.S. 18:1313(F)(i). Once again, there is no allegation that the absentee ballots were miscounted or mishandled in a way that would have affected the vote count in the election.
The next item alleges that there was a denial of absentee ballot requests of handicapped, elderly and infirm voters. The petitioner fails to indicate (as is the case in all items) how many voters were affected, and fails to assert that the denial resulted in any voters not being able to vote.
There is no indication in the next item on the list, concerning the failure to include African-American voters on the list of qualified voters, as to how many voters were affected or in what precincts the voters were registered. Likewise, the next item on the list does not indicate how many voters, who allegedly had not properly and timely registered, were included on the list of qualified voters; does not indicate how many of these voters voted; and does not indicate why, with due diligence, improperly and untimely registered voters were not discovered on the voter lists prior to the election.
The next item on the list concerns the alleged harassing of African-American voters during absentee voting and on election day. Not only does this item fail to indicate how many voters were affected, or how the voters were harassed, but this item also fails to indicate that the alleged harassment prevented any voter from exercising his or her right to vote.
The next two items on the list concern alleged failures to allow African-Americans to vote because they either were allegedly convicted felons, or had no photographic identification. Besides failing to indicate how many voters were affected, these items both fail to indicate why, with the exercise of due diligence, such irregularities could not have been raised by objection at the polls.
The final item asserts "other unlawful acts which will be shown at the trial of this matter." This item should be accorded no weight for obvious reasons.
Considering the lack of specificity in each and every item listed in Paragraph X of the petition, and the complete failure of several items in the listing to aid petitioner, we conclude that the trial court correctly sustained the exceptions of no cause of action. As previously noted, the petitioner relied upon all of the sticks in his bundle both to support the requirement of specificity and to support his claim that the irregularities were so numerous as to affect the result. The allegations not only failed to be specific enough to put the defendants on notice so as to allow them to prepare their defense, but also failed to adequately state facts sufficient to indicate that the number of votes affected by the *846 alleged irregularities was sufficient to alter the election's outcome.
Although we conclude that the trial court correctly sustained the exceptions of no cause of action, we also must conclude that the trial court erred in failing to give petitioner an opportunity to amend his petition. Under the provisions of La. C.C.P. art. 934, when the grounds of an objection pleaded by the peremptory exception (including no cause of action) may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. It is only when the grounds of the objection cannot be so removed, or when the plaintiff fails to comply with an order to amend, that an action is to be dismissed. We also observe that the remedy for sustaining an exception of vagueness is to give the other party an opportunity to amend. Such amendment is not prohibited to the extent that the amendment simply makes the allegations of the petition more specific, rather than adding new allegations of irregularities. Compare Burch v. McClendon, 123 So.2d 636 (La.App. 1st Cir.1960), with Smart v. Curry, 456 So.2d 630 (La.App. 1st Cir.1984), writ denied, 454 So.2d 127 (La.1984).

CONCLUSION
For the reasons set forth above, the trial court's granting of the exception of no cause of action is hereby sustained, but the judgment is reversed to the extent that it dismissed petitioner's action rather than allowing an opportunity to amend. Although we conclude petitioner has made sufficient allegations to entitle him to an opportunity to amend in order to state a cause of action, we also recognize that the expeditious nature of these proceedings mandates that any amendment be made quickly. Accordingly, we hereby order that this case be remanded to the district court, and that petitioner be given 24 hours from noon, December 8, 1999, in which to file an amended petition in the district court. The costs of appeal are assessed to appellant.
AFFIRMED IN PART, REVERSED IN PART, AMENDED AND REMANDED.