SOMMERVILLE, J.
Plaintiff and defendant were candidates for district attorney in the Democratic primary, held in the Twenty-Eighth judicial district, on September 3, 1912. The said district is composed of the parishes of St. Charles, St. John the Baptist, and Jefferson. There is a former judgment in the ease, rendered by us Oct. 10, 1912, under the No. 19,638 (59 South. 791),[1] wherein we remand the ease for another trial. There has been a second judgment rendered by the district court in favor of the plaintiff, Marrero; and defendant, Middleton, appeals therefrom.
A statement of the case fully appears in the judgment already handed down, on October 10, 1912. We therein dispose of several of the questions now presented for a second time on this appeal.
[1] This suit is in its nature a contest for office, although it grows out of a Democratic primary election held for the purpose of determining who should be the candidate for this particular office of said party. We hold in our former judgment that the objections to evidence attacking collaterally the registration of particular voters were properly overruled by the trial judge as to qualifications necessary for registration; and we now adhere to that ruling. We also hold in our former opinion that under the primary statutes of this state a candidate does not lose his right to object to illegal votes because he did not challenge the voters at the polls; that he should be permitted to prove, if he can, that the voters named in his answer were not entitled to vote, because they had not paid their poll taxes, or were nonresidents, or were not registered.
In the very limited time in which we have to dispose of this case, it will be impossible to go into a full discussion of the evidence.
[2] Defendant claims that there were 78 illegal votes cast and counted for Mr. Mar *435 rero, which should be deducted from the majority found by the district court in his favor, numbering 49, which would have the effect of reversing the finding of the trial court, and of having defendant declared the nominee for district attorney for the Twenty-Eighth judicial district. Among the 78 votes declared by the defendant to have been illegally cast are 30 which, under our former ruling, cannot be inquired into in this case. The voters were legally registered at the time that they offered to vote, and did vote; and, in the absence of challenges, or other proceedings prior to the election to have their names erased, the registration rolls are binding upon the courts. In the 30 complained about are 3 not registered, whose names are on the rolls; 16 “not registered until after August 29 th,” whose names were restored by the registrar on the applications of or for the voters, for the reason that they had been erroneously or wrongfully canceled from the rolls; 10 aliens, who were registered; and 1 “registered as a native of Louisiana, and by his own testimony, shown to be a native of Italy.” If these 30 votes are subtracted from the 78 votes alleged to have been illegal, there would be left 48 legal votes according to the claim of defendant. Conceding, for the moment, that these 48 votes were irregularly or illegally cast and counted, which is not the true condition as shown by the evidence, the finding of the trial judge in Marrero’s favor would not be affected; for he has been declared to have received 49 votes, which is a majority of 1, sufficient to give him the nomination.
On the list of illegal voters declared upon by defendant is one “not affiliated with the Democratic party”; but we have not been given his name, the circumstance is not alleged in the answer, and we have not been pointed to any portion of the record where evidence concerning him may be found. But his vote becomes unimportant, in view of the fact that among the 48 votes just referred to are several who, the evidence shows, were entitled to vote, and that they voted for Mr. Marrero.
There was no contention whatever as to the vote of St. Charles parish. The evidence was confined to the returns from St. John the Baptist parish and certain wards in Jefferson parish.
[3] On the original trial of this case, no question was raised as to St. John the Baptist parish; but on the second trial, had under the order of this court remanding this case for trial, it was discovered that certain discrepancies were found in the ballot boxes from St. John, which caused the judge of the trial court to disregard the ballots, which, under ordinary circumstances would have been the best evidence of the vote on September 3d, and to accept the returns made by the officers in charge of the election at the time of tbe election.
After hearing argument on both sides, and examining the evidence 'as best we can, we conclude that the trial judge was correct in his finding. While the evidence does not disclose the person or persons who may have tampered with the five boxes which had been tampered with, there were found in them unfolded ballots which had not apparently been placed therein by the voters on election day. There were other evidences of fraud which it is unnecessary to recount here.
We have already discussed the return from Jefferson parish, in the earlier part of this opinion.
On the list of illegal voters, prepared by the defendant are “nonwhites, 22,” who, he declared, were not entitled to vote at a white Democratic primary, and that they had voted in the parish of Jefferson. I-Ie charges that they are of the colored, or negro, race; and, because of that fact, they could not legally have been permitted to vote at a white primary, although they were legally registered.
*437 [4] The question presented for solution is' whether a person of the negro race may be permitted to vote at a white primary election, though the registration book shows him to be a white Democrat. That question does not involve the other question whether such colored person has been legally registered or not. The Constitution defines and fixes the qualifications of an elector, and that instrument does not require the applicant for registration to be a white person, or of any political party. The Constitution provides the following qualifications for suffrage:
“(1) The voter must have resided two years in the state, one year in the parish, and six months in the precinct.
“(2) He must have been legally registered.
“(3) He must have demonstrated, in the method pointed out by the Constitution, the right to register under the educational qualification, or he must own property to the value of three hundred dollars, or he, or some ancestor of his, must have been a qualified elector on January 1, 1867.
“(4) He must have paid the poll tax in each of the two years prior to that in which the election is held.”
No other persons have the right to vote at general elections in this state.
With reference to primary elections, article 215 of the Constitution says:
“The Legislature shall enact laws to secure .fairness in party primary elections, conventions, or other methods of naming party candidates.”
And the Legislature, in section 9 of Act 49 of 1906, page 69, with reference to this subject, provides:
“The qualifications of voters in all primary elections held under this act shall be'the same as is now required by the Constitution and election laws of this state for voters at general elections, subject to an additional political qualification which may be prescribed by the state central committee.”
On the 8th day of July, 1906, the state Democratic central committee adopted the following resolution:
“Mr. Davey moved, and it was duly seconded and carried, that, in compliance with the law, the further qualification of a voter shall be that he shall be a white Democrat.”
The language clearly indicates that a person offering to vote at a Democratic primary must be a white Democrat. But, we do not find that the Legislature has attempted to make color or party affiliation a prerequisite to registration. In 1908, section 4 of Act No. 98, p. 141, it is provided that the precinct register in the registration office in the parish of Orleans shall show and contain, among other things, color and party affiliation of the registered voter. And, in section 28 of the same act, page 147, it is provided:
“That in order that none but those affiliated with and being members of any political party shall participate in any primary election held by any political party, it shall be the duty of the registrar of voters of the various parishes throughout the state to provide an additional space on the regular state registration book immediately following the last perpendicular ruled column in such books, which space shall be headed ‘Party Affiliation, it shall be the duty of the registrar of voters to ask each applicant for registration the question, ‘What political party do you desire to affiliate with?’ and the name of the political party so given by such person so applying to be registered shall be recorded in the column provided on the books of registration. The registrar of voters being thereby required to furnish blank forms for signature by the applicant for that purpose.”
In that section there is no requirement that the person applying for registration shall declare his color, or that the registrar shall declare his color for him.
We are therefore of the opinion that the color of a person has nothing whatever to do with the validity of his registration, and that his registration as a white Democrat will not prevent a candidate in a primary election from contesting the validity of the vote of a colored person, who has voted as a white Democrat. In our former opinion we did not rule that, among the qualifications for registration, is that a person should be of the white race, or of the Democratic party. They are not qualifications for registration, and the registration roll is not conclusive on the questions of color or party af *439 filiation; and defendant had the right to object to such votes, in a contest for office, and it was the duty of the court to admit evidence on this point. But, as we have seen, if the 22 votes complained of had been east for Mr. Marrero, and should have been subtracted in the final count by the court, Mr. Marrero’s nomination would not have been affected by such reduction. It therefore becomes unnecessary to remand the case for the purpose of hearing the evidence concerning these 22 persons, and for whom they voted.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed, at defendant’s cost.

Ante, p. 372.