JOSEPH H. MOORE ET AL., MEMBERS OF THE BOARD OF·
SUPERVISORS OF ELECTION OF THE MAYOR AND CITY
COUNCIL OF HAVRE DE GRACE, *v*. JAMES H. BAY
ET AL.

*Municipal Election—Havre de Grace—Qualifications of Voters*
*—Mandamus.*

Where, in a mandamus proceeding, the answer, a demurrer to·
which was overruled, did not deny the averments of fact in the·
petition, such averments, and the facts set forth in the answer,.
presented a question of law, determining the propriety of the·
issuance of the writ.                              p. 289·

The Legislature had the power to prescribe the qualifications·
of those entitled to vote in the municipality of Havre de Grace,
and to declare that registration as it existed on the day of·
election should be conclusive of the qualification of the voter, in
the absence of fraud on the part of the election and registra--
tion officials.                                    p. 292

A legislative intention that the registration books should be·
conclusive evidence of the qualification of the voter in a munici-
pal election, in the absence of fraud on the part of officials,.
must be determined by the language of the statute with respect
to the particular subject-matter involved, when considered with.
reference to the general scope and policy of the public local law.
                                                   p. 293

Under Acts 1916, ch. 680, secs. 279, 287-289, and Acts 1920,
ch. 634, pp. 1229, 1230, the final registration list of voters, pre-
pared in accordance with those statutes, is conclusive evidence
as to who are entitled to vote at a municipal election in Havre
de Grace, and the board of supervisors of election of the city
have no power to pass upon the qualification of the registered;
voters participating in such an election.          pp. 293-297·

*Decided December 10th, 1925.*

Appeal from the Circuit Court for Harford County (HARLAN, J.).

Mandamus proceeding by James H. Bay and Edgar M. Geathers against Joseph H. Moore and others, members of the Board of Supervisors of Election of the Mayor and City Council of Havre de Grace. From an order directing the writ to issue, the respondents appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, and PARKE, JJ.

*Edwin H. W. Harlan* and *Frederick Lee Cobourn,* for the appellants.

*A. Freeborn Brown* and *Shirley Carter,* for the appellees.

PARKE, J., delivered the opinion of the Court.

On May 4th, 1925, a municipal election was held in Havre de Grace for the selection of its mayor and three members of the city council. There was a contest, and nine hundred and eighteen votes were cast. The canvass and report of the municipal supervisors of election certified that George T. Pennington had been elected mayor, and Harry Lawder, Jr., Jacob Davis, and Harry Atkinson had been elected councilmen; and these successful candidates accordingly qualified and assumed the discharge of their official duties on May 18th. The majorities of those elected ranged from fifty-seven to ninety-five votes. Two of the defeated candidates for the city council, James H. Bay and Edgar M. Geathers, who possessed all the qualifications of voters and of nominees for the city council, determined to contest the election of the mayor and three councilmen, and for that purpose filed on May 25th with Joseph H. Moore, Robert Seneca and Frank Poughkeepsie, constituting the board of supervisors of election of the Mayor and City Council of Havre de Grace, a petition, which assailed the municipal election as void and of no effect, and prayed that the board hear and determine the grounds of this attack.

The first reason assigned was the general one that "about one hundred and seventy persons voted" who were not legally qualified to vote because they did not have "all of the five qualifications required by and provided in the charter," which were an age of more than twenty-one years; a residence in Havre de Grace of not less than one year next preceding a municipal election; an assessment on the tax books of the city, on the first day of January next preceding the election, of at least two hundred dollars worth of real or personal property; the payment one month before the day of the election of the municipal taxes levied for the preceding year on not less than this amount, and a registration among the registered voters of the city. The other and particular reasons specified were that "about one hundred and seventy persons voted," who had not paid, at least thirty days before the day of the election, the city taxes on their property assessed to them; or who did not own, and every one of whom was not assessed on or before January 1st, 1925, on the municipal books with real and personal property in the minimum amount of two hundred dollars; or whose names were fraudulently and deceitfully entered on the tax levy book of the city as having seasonably paid the current taxes to the treasurer of the city, through which fraud and deceit the mayor and city council failed to strike their names off of the list of qualified registered voters, and the said "about one hundred and seventy persons" were thereby enabled unlawfully to vote at the election. No intimation is given who made these entries or who was responsible for them.

On the day of the receipt of this petition the board of supervisors of election notified the protestants that the hearing in a municipal election contest must be conducted in accordance with the rules and regulations prescribed by ordinance of the mayor and city council and that, inasmuch as no ordinance of the kind had been passed, the board would request the city council to pass the ordinance, and when it was passed, the board would arrange for a hearing.

This reply was not satisfactory and, on June 5th, the

appellees, James H. Bay and Edgar M. Geathers, filed a petition against the appellant, the board of supervisors of election of the Mayor and City Council of Havre de Grace, for the issuance of a writ of mandamus forthwith to compel a hearing and determination of the questions presented by the petition, which attacked the election as a nullity upon the grounds above stated. This petition was answered, and the answer was demurred to, and the demurrer was overruled. In its order directing the writ to issue, the court specified the notice to be given to the successful candidates and the contestants, fixed the day, time and place of the hearing, and limited the period within which the contest should be conducted, both in the event of an appeal, and of no appeal, from its order.

No testimony was taken. The answer of the respondents did not deny the averments of fact in the petition. The uncontroverted allegations of the petition and the facts set forth in the answer present a question of law, which will determine the propriety of the issuance of the writ of mandamus in this case. *Price v. Ashburn,* 122 Md. 520; *Good v. Commissioners,* 137 Md. 198; *Hooper v. Farnen,* 85 Md. 587.

The material facts have been set forth, and on these facts a reversal is sought on the main grounds (*a*) that the board could not hear and determine the proposed contest because the statute conferred "juridiction to hear and determine, under such rules and regulations as the mayor and city council may by ordinance prescribe, all contested city elections," and no such ordinance had ever been passed, although the provision originated in the Acts of 1902, chapter 127; (*b*) that the petition did not present an election contest within the meaning of the charter; (*c*) that the qualifications of the voters on the registration list were solely for the city clerk as the officer of registration and for the mayor and city councilmen as a board of revision and review, with a right of appeal therefrom to the Circuit Court for Harford County;

and, finally, (*d*) that, if the board of election supervisors did have jurisdiction of the matter set forth in the petition, the court's order for the mandamus was defective because it sought not only to compel a hearing and determination of the contest, but also to control the discretion of the board in the method of the exercise of the power.

It is our conclusion that the effect to be given the registration list will control the decision in this case, and we shall, therefore, proceed to consider the provisions of the municipal charter bearing on that question.

In pursuance of the statutory requirement the supervisors of election furnished the city clerk with registration books, which it is the duty of the clerk to protect and keep safe. A municipal election is held biennially on the first Monday of May. On the second Monday and Tuesday in April of the year in which the municipal election is held the city clerk sits at the council chambers between the hours of nine o'clock a. m., and seven o'clock, p. m., for the purpose of registering the legally qualified voters of the city.

It is the function of the clerk to enter in alphabetical order upon the registry book the name of every person appearing before him at the times specified and requesting to be registered, provided that, in his capacity as register, the clerk shall be first satisfied by the applicant's oath, or otherwise, that he is a male citizen of the United States above the age of twenty-one years who has resided in the City of Havre de Grace not less than one year preceding a municipal election, who was on the first day of January next preceding the election assessed on the tax books of the city with at least two hundred dollars worth of real or personal property, and who has paid the tax levied for the preceding year on not less than the aforesaid amount one month before the day of election, but if the applicant is an active member of the local fire department, he is exempt from taxation to the extent of one thousand dollars, yet is not thereby deprived of the franchise to vote in city elections, if he has all the

other requirements of a qualified voter. Acts of 1920, ch. 634, pp. 1229, 1230.

The clerk is given the power to administer the oath; and, if convinced of the eligibility of the applicant, by the proof, must enroll his name upon the registry. But his action is not final, because after the registration is closed the mayor and city council sit on the following Monday as a revisory board, whose duty it is to strike from the registration book or lists the names of all persons who are dead, or who have removed from the city, or who are not assessed with sufficient real or personal property, or who have not paid the tax levied for the preceding year on not less than the requisite amount within one month before the election, or who are otherwise disqualified as voters.

Within one week after this sitting as a revisory board, the mayor and city council publish by handbills to be set up at the city hall, and in at least two other public places in the city, a list of names that have been stricken from, and that have been added to, the registration books. If any person should feel himself aggrieved by the action of the clerk in registering, or refusing to register, the name of any person, or by the action of the Mayor and City Council in striking out, or refusing to strike out, the name of any person, a hearing is granted before the city council, which is given power to determine the matter, subject to an appeal to the Circuit Court for Harford County.

In addition to these safeguards, the law compels the clerk to give public notice of the time and place of the sitting for the registration of voters, and of the time and place of the sitting of the city council for the review of the registration lists, for at least two weeks prior to the earlier sitting, by handbills and by advertisement inserted in two newspapers, if so many be published in Havre de Grace. The statute constitutes the clerk the custodian of the registry books, which must be kept in a safe provided by the municipality, and compels him to furnish to any person, who applies, an accurate copy of the list of registered voters at the price of one

cent for every. one of the names. The clerk and his deputy, acting as officers of registration, are made subject, except as by the law otherwise provided, to all the penalties which are denounced against officers of registration under the general election laws of Maryland.

The voters, who so remain on the registration books on the day of the election, and those only, constitute the "qualified voters of said city, and as such shall be entitled to vote" at any next ensuing election, because the statute explicitly provides that only those are qualified voters "whose names shall appear upon the list of registered voters of said city" in the manner here set forth. And the method provided for the determination of those who are embraced within the class of qualified voters at any election is the delivery by the clerk to the judges of election of the registration books when necessary for use in an election. Acts of 1916, chapter 680, secs. 279, 287, 288, 289.

By an amendment in 1924, the General Assembly enacted that "the Mayor and City Council shall provide for an entire new registration in the year 1926 and every seven years thereafter, but no entire new registration shall be made by the Mayor and City Council or the clerk thereto in the year 1924, or at any other time than as herein expressly set forth." Acts of 1924, ch. 78, sec. 288, p. 159. This is a legislative recognition that the existing registration, with the addition of new qualified voters and the removal of those found disqualified, in the manner prescribed, constituted the list of qualified voters for the year 1925, when the election in question was held. The Legislature had the power to prescribe the qualifications of those entitled to vote in the municipality of Havre de Grace; and, likewise, to declare that registration as it existed on the day of election should be the conclusive evidence of the qualification of the voter, if there was no fraud affecting the integrity of the list of voters on the part of the election officials, who were charged with the duty of registration or of its review, or of the custody of the registration books or lists. *Elbin v. Wilson,* 33

Md. 143; *Southerland v. Norris,* 74 Md. 326-331; *Richardson v. Blackstone,* 135 Md. 530; *Hyde v. Brush,* 34 Conn. 454; *Marrero v. Middleton,* 131 La. 432.

If, therefore, the legislative intention was to make the registration books of Havre de Grace the conclusive evidence of the qualification of the voter at the polls, in the absence of fraud on the part of some official charged with their preparation, revision or custody, the intention must be found manifested by the language of the statute with respect to the particular subject matter involved, when considered with reference to the general scope and policy of the public local law. *Graham v. Wellington,* 121 Md. 661; *Carr v. Hyattsville,* 115 Md. 545.

A careful weighing of the language of the local statute, in connection with its purview and object, leaves us no doubt that registration is an imperative qualification for voting and that, when no fraud or misconduct is charged or imputed to the election officials in registering the voter or in retaining his name, the official registration books become, on the day of election, the list of the only qualified voters of the municipality, and that those so on the registration books have the privilege of voting. The original act, with its amendments, does not permit any person to be registered until he has satisfied the register by proof, under oath, of all the conditions necessary for his competency as a voter. The person is, therefore, not enrolled except through a judicial act by a duly constituted public officer; and after his name is so placed on the roll of municipal voters, it must be subject to the yearly review of a supervisory board, which sits openly in a public place. Notice is given to the public of the times and places of all these public sessions of the register and of the board of review; and a list of every name added and of every name removed from the registration list is published; and relief is afforded to "any person feeling aggrieved by the action of the clerk in registering or refusing to register the name of any person as aforesaid or by the mayor and city council in striking out or refusing to strike

out the name of any person as aforesaid, shall have the right
of a hearing before the council, which shall have power to
determine the matter, subject to an appeal to the Circuit
Court for Harford County." As supplementary to these
safeguards, the law enacted that the registration officials
"shall have all the powers and be subject to all the penalties
which are or may hereafter be by law provided for officers of
registration under the general election laws of Maryland,
and also, that the municipal election should be conducted,
except where otherwise specially provided for, substantially
in the same manner as state and county elections are con-
ducted; and that the offenses and penalties prescribed by law
for state and county elections should be applicable to all
election officers appointed under the local act, and to all other
persons to whom the same may be reasonably applied. Acts
of 1916, ch. 680, secs, 289, 296; Bagby's Code, art. 33, sec.
97 *et seq.; Cochran v. State,* 119 Md. 539.

The local statute's assimilation of the conduct of the
municipal election with the manner in which the state and
county elections are held makes important and persuasive,
when considered in respect to the declaration of the local
law that registration is indispensable for qualification as a
voter, the modal regulation of the general election law which
limits the ground of challenge of a voter's qualification to
cast his ballot to the single question of his personal identity
with the person registered. Article 33, sec. 77.

All these careful checks, regulations and penalties have
the single object of securing an accurate and trustworthy list
of qualified voters, and of so keeping it by purging it, from
time to time, of the unqualified, and adding to it the com-
petent voters. The means provided are sufficient for the ac-
complishment of this object, if they are seasonably employed.
It is, also, a reasonable inference to be imputed to the Gen-
eral Assembly, that it was presumed that the registration
would be correct, accurate, and honest, and that public offi-
cers charged with duties in connection with it would not be
corrupt; and that, if this usual and reasonable expectation

in regard to official conduct should not be fulfilled, it would be such an exception as would challenge and arouse attention, and that the methods provided would be ample to redress the wrong before the election.

The public sittings of the registration officer, and of the board of review, together with the publication of the changes in the registration lists and the obligation of the clerk to furnish a copy of the names of the registered, the penalties denounced against any wrongdoing and the prompt and adequate relief afforded through the court, not only tend to lessen the opportunities for illegal and fraudulent voting, but the occasions for turmoil, disorder and delay that so frequently attend elections when a voter's various qualifications may be challenged at the polls, and his competency must then and there be ascertained and decided. The able author of *Cooley on Constitutional Limitations* (7th ed.) well states: "In some of the states it has also been regarded as important that lists of voters should be prepared before the day of election in which should be registered the names of every person qualified to vote. Under such a regulation, the officers whose duty it is to administer the election laws are enabled to proceed with more deliberation in the discharge of their duties, and to avoid the haste and confusion that must attend the determination upon election day of the various and somewhat difficult questions concerning the right of individuals to exercise this important franchise. Electors, also, by means of this registry, are notified in advance what persons claim the right to vote, and are enabled to make the necessary examinations to determine whether the claim is well founded and to exercise the right of challenge if satisfied any person registered is unqualified." At pp. 905, 902, and see p. 907. *Collier v. Carter,* 100 Md. 385-386; *Hanson v. Daly,* 129 Md. 287.

No accusation is made that any ballot cast was by an unregistered person, and no fault or fraud or mistake is alleged in the conduct of the election, the canvass of the votes cast, the statement or return of the canvass, and the

other proceedings which ended in the proclamation of the
result of the election and the formal qualification and induc-
tion into office of the candidates declared elected.   Neither
is there an averment of any non-compliance with the pro-
visions of the statute with respect to the public notice of
the regular sittings for registration and revision, nor of the
failure duly to publish the list of names that had been stricken
from, or added to, the registration books.   It was not con-
tended that any effort was made to have any of the alleged
unqualified voters erased from the registration list.   No in-
stance is given, nor charge is made, of any irregularity or
wrongdoing on the part of a single registration official,
whether sitting as register or as a member of the board of
supervision and review.   The sole ground for the election
contest proposed is that the registration list contained about
one hundred and seventy persons, who should not have been
on that list because of a disqualification, which either existed
when they were registered, or arose subsequent to their
registration.   In any event, the qualifications with respect
to an assessment of property in the required amount and for
the prescribed payment of the tax levied for the preceding
year must have existed previous to the sittings of the register
and of the board of revision, as these sittings were held sub-
sequent to the times fixed for the assessment to have been
made and the tax paid.   It is clear that full opportunity was
afforded under the law for the registration list to be purged,
before the municipal election in question, of all unqualified
voters, and that the presence on the registration list on elec-
tion day of about one hundred and seventy of such unqualified
voters was solely attributable to the failure to have such
names expunged by the process provided by the law.

Under the facts of this record, we are of the opinion that
it was the intention of the statute to make the final registra-
tion lists of voters conclusive evidence of those entitled to vote
at the ensuing municipal election, and that the board of
supervisors of election of Havre de Grace had no power to
pass upon the qualification of the registered voters partici-

pating in the municipal election here assailed. Every opportunity and means was provided by statute to assure the purity, integrity and accuracy of the final registration, which remained unquestioned and unchallenged until after an orderly and fair election, an honest and accurate count and return; and the Court has found no legal basis to deny to the statute its plain meaning, which has strong support from sound and practical reasons of public policy. These are nowhere better stated than in *Cooley on Constitutional Limitations* (7th ed.), at p. 934: "An election honestly conducted under the forms of law ought generally to stand, notwithstanding individual electors may have been deprived of their votes, or unqualified voters been allowed to participate. Individuals may suffer wrong in such cases, and a candidate who was the real choice of the people may sometimes be deprived of his election, but as it is generally impossible to arrive at any greater certainty of result by resort to oral evidence, public policy is best subserved by allowing the election to stand, and trusting to a strict enforcement of the criminal laws for greater security against the like irregularities and wrongs in the future."

It will not be necessary to discuss the other points argued on brief and at bar. The writ of **mandamus** will not issue unless to subserve some just or useful purpose, and, as there is no sufficient ground appearing on this record for a contest over the validity of the election of the incumbents, no writ of mandamus should have been issued.

*Order reversed, and petition dismissed, with costs.*