LEE *v.* SECRETARY OF STATE AND
MAHONEY
and
LEE *v.* BOARD OF SUPERVISORS OF ELEC-
TIONS OF BALTIMORE COUNTY
AND MAHONEY

[Nos. 205 and 206 (Adv.), September Term, 1968.]

*Decided per curiam September 24, 1968.*

*Opinion filed October 11, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SMITH, JJ.

*W. Lee Harrison,* with whom was *Richard C. Murray* on the brief, for appellant.

*Frank H. Newell, III,* with whom was *Patrick A. O'Doherty* on the brief, for George P. Mahoney, appellee.

*Robert P. Conrad, Jr.* for the Board of Supervisors of Elections of Baltimore County, appellee in No. 206 only.

HAMMOND, C. J., delivered the opinion of the Court.

The Circuit Court for Baltimore County rejected two challenges to the right of George P. Mahoney to run in the November 1968 election as an independent candidate for the Senate of the United States, and we affirmed the court's actions by per curiam order in order to permit the timely preparation of absentee ballots. We now set out our reasons for the affirmances.

Mahoney, having failed in various attempts to gain high political office in Maryland as a registered democrat, decided to run for the Senate of the United States as an independent candidate. Code (1967 Supp.), Art. 33, § 4-1 (a), provides that nominations for offices which are filled by election may be made

by primary election, primary meeting or petition, and § 4-1 (b) requires nominees of political parties that polled 10% or more of the entire vote in the State cast in the last preceding general election to be nominated by primary election. Section 4A-1 requires that a nominee in a primary election must be affiliated on the registration lists with the party whose nomination he seeks. Section 7-1 (a) says that a candidate for any public office who is neither a candidate nor a registered member of a party whose nominee must be nominated by primary election may be nominated by petition, "as in this section provided." *See Hennegan v. Geartner,* 186 Md. 551 for a history of these provisions.

Mahoney was registered on the books of the Board of Supervisors of Elections of Baltimore County as a democrat until April 26, 1968. On that day the Board reopened the registration books—which it had closed on March 10, 1968—and permitted Mr. Mahoney to change his registration from democrat to decline. Mr. Mahoney thereupon proceeded to have gathered the number of valid signatures necessary under § 7-1 (b) of Art. 33 of the Code to permit him to run as an independent candidate, and duly filed his petition of candidacy with the Secretary of State of Maryland. On August 1, 1968, the Secretary endorsed and delivered to the *Daily Record* the check Mahoney had given him to pay for the publication in that paper of the names of those who had signed the nominating petition.

On July 31, 1968, J. Tyson Lee, a resident, taxpayer and registered voter of Maryland, filed a bill in the Circuit Court for Baltimore County against Mahoney and the Secretary, alleging that Mahoney "is a registered [voter] * * * who attempted to change his registration from Democrat to Decline on or about April 26, 1968, and * * * on * * * July 29, 1968, filed his nomination by Petition as a Candidate for the United States Senate from Maryland * * *." The bill further alleged that in compliance with §§ 1 [1-1] and 3-8 (b) of Art. 33 of the Code changes in party affiliation must be made not less than six months prior to any election, and that the Board had closed the registration books on March 10, 1968, but had reopened them on April 26, within six months of September 12, the day of the primary election, for the sole purpose of allowing Mahoney to change his registration from democrat to decline, and,

therefore, the change was nugatory and Mahoney was ineligible to run as an independent. Lee prayed the court to enjoin the Secretary of State from certifying Mahoney's candidacy and to declare the eligibility or ineligibility of Mahoney as an independent candidate.

Mahoney demurred to the bill and the Secretary answered. Judge Proctor held a hearing on the demurrer on August 19 and at its conclusion announced he would enter a decree sustaining the demurrer because Lee had not followed the procedures established by Code (1967 Supp.), Art. 33, § 3-16, "Challenges of voters and correction of lists; how made; forms," which require a challenge to the correctess of the registration lists to be made to the Board "on or before the Tuesday, sixteen weeks preceding any primary election."

On August 23, Lee shot another arrow from his bow at Mahoney and "pursuant to Chapter 1100, Subtitle B of the Maryland Rules of Procedure," appealed to the circuit court from the decision of the Board of Election Supervisors of Baltimore County, dated August 9, denying him a hearing on his effort under Code (1967 Supp.), Art. 33, § 3-16, to have the Board reinstate Mahoney's name on the list of democratic voters. The Board had advised Lee that he had not complied with § 3-16 of Art. 33 "for a number of reasons, including the requirement that a challenge be submitted sixteen weeks preceding [any] election [including the general election]."

The same day, August 23, Judge Proctor sustained Mahoney's demurrer. Mahoney and the Secretary of State then filed a stipulation of facts and on August 29 Judge Proctor entered a decree dismissing the bill as to the Secretary. Mahoney then intervened in the administrative appeal and on September 3, Judge Proctor, holding that Lee had acted too late under § 3-16, affirmed the Board. Lee appealed all the decrees and orders adverse to him and in this Court the cases were consolidated and argued together.

In our view Judge Proctor clearly reached the correct result for the right reasons. We were told at the argument by counsel for the Board of Supervisors of Elections that the Board had taken the position that as far as voters who wished to change to decline in order to run as independents were concerned, the words "any election" in the provision of § 3-8 (b)

of Art. 33 that "* * * voters who wish to change from affiliation with a party to registration as a decline, may do so at any time prior to six months before any election," were to be construed as meaning "any general election," and it was for this reason the Board reopened its books to permit Mr. Mahoney and any others who wished to do so to register as a decline. We agree with Judge Proctor that this interpretation of the statute is erroneous and that when § 3-8 (b) says "six months before any election," it means six months before any primary or general election. Code (1967 Supp.), Art. 33, § 1-1 (a)(6) defines "election" as a "process by which voters of the State * * * vote for any * * * public officer pursuant to the laws of this State or the United States * * * and unless otherwise indicated includes all elections, primary, general * * *." The words of § 3-8 are plain and precise and leave no room for ambiguity or doubt. *See Board of Supervisors of Elections v. Weiss,* 217 Md. 133. The Board had no right to permit Mahoney to change his registration from democrat to decline within six months of the primary election of September 10, 1968, and it erred in so doing. *Hennegan v. Geartner, supra.*

The Baltimore County Board is not the first Board to have erred, however, and the legislature, recognizing that to err is human, has provided mechanics for correcting registration lists. Section 3-16 (a) of Art. 33, provides :

> *"Who may file challenge or application for correction of list; when and where filed.*—Any voter may file with the board or with the board of registry objections to the registration of any person whom such voter has reason to believe is not eligible to vote, or a request for the addition of any person whose name has been erroneously omitted or dropped from the registration list of any precinct. Application for the correction of any such precinct registration list or a challenge of the right to vote of a person named on such list may be made by any qualified voter at the office of the Board on or before the Tuesday, sixteen weeks preceding any primary election."

Section 3-16 (b) provides how the challenge is to be made—

in the form prescribed by § 3-16 (e), that is, under oath of the challenger, who must state his grounds of challenge. The challenger is required to appear at the hearing that § 3-16 (d) requires the Board to hold, and § 3-16 (c) directs that notice of the challenge and the hearing is to be mailed to the person whose registration is challenged, and provides that he may appear at the hearing in person or by counsel. An appeal from the action of the Board to the circuit court or the Superior Court of Baltimore, with a subsequent appeal to the Court of Appeals, is provided by § 3-21.

One who asserts that there is listed on the registration lists something that should not be or that there is not listed something that should be must seek correction by way of § 3-16, the special statutory procedure set up by the legislature, if that way is available to him. No rule is better established than that a claimant must exhaust the statutory remedy the legislature has provided for the wrong of which he complains. If he is unsuccessful and wishes aid from the courts, he must take judicial appeals in the manner provided by the legislature rather than invoking the ordinary jurisdiction of the courts.

Where there is a statutory appeal from administrative or official decisions, jurisdiction of the courts on appeal is limited to that conferred by the statute. *Scherr v. Braun,* 211 Md. 553 at 563, and cases cited; *Austin v. Director of Patuxent Institution,* 245 Md. 206. In *Cox v. Bryan,* 81 Md. 287, discussed at some length and relied on in *Scherr,* the Court of Appeals, after hearing argument and considering a motion for reargument, gave careful consideration to the case of one whose name had been stricken from the list of voters and whose appeal to the circuit court had been dismissed as having been taken too late. Chapter 573 of the Acts of 1890 provided that a party aggrieved by the action of an officer of registration had the right to appeal to the circuit court within one week after the final day of the October sitting of the registration officers. The final day of the sitting of 1894 was October 15. On October 26, the State's Attorney stipulated that no advantage would be taken of the fact that the petition of appeal had been filed late. On October 27, the circuit court ordered that the petition be considered filed as of October 22; in actuality it was filed on Oc-

tober 30. The Court of Appeals, affirming the dismissal of the appeal below, held that the circuit court had had no jurisdiction to consider the appeal. The Court said in its original opinion:

"But neither the agreement of counsel nor the order of Court can confer jurisdiction in a case where the law does not authorize the Court to take cognizance of the matter. This is a proceeding under a statute, and to give the Court jurisdiction, the requirements of the Act must be strictly complied with." [81 Md. at 288]

In its opinion answering the motion for reargument, the statement quoted above was emphasized thus:

"The jurisdiction of the Judge to entertain appeals from the officer of registration, is special and limited, and distinct from and not embraced by his general authority; and where such jurisdiction is conferred by Act of Assembly on any tribunal, its power to act, as it has done, must appear upon the face of the proceedings. If these proceedings are brought to this Court for review, it must appear that everything has been done, 'which the law required as the basis of the authority that has been exercised;' * * *." [81 Md. at 290]

The Court went on to say that the registration laws have a far wider scope than simply to conserve private rights and are of utmost importance to the citizenry generally in securing fair and honest elections by means of a system of registration of voters, and added that in order to secure these objectives:

"the Legislature, by this twenty first section, has thrown wide open the right to appeal from the action of the register. Not only is it given to the person applying for registration, but to 'any person who thinks himself aggrieved;' that is, to any person who thinks the register has acted improperly, and the applicant himself need not be made a party. But while by the terms of the Act, the right of appeal is thus made so extended, and in consequence likely to become a means

of oppression and wrong in the hands of designing persons, whereby citizens could be deprived at particular elections of their right of franchise, the Legislature has carefully and wisely expressed the terms upon which the appeal may be taken. It must be, after the final day of the October sitting, *Ticer v. Thomas, 74 Md.* 342, and within one week thereafter. The clause is not thrown in 'parenthetically,' but is in the very paragraph and sentence by which the right is conferred, and forms one of the terms upon which it may be exercised. It is not a model regulation, as was the case in *Ayres v. Watson,* 113 U. S. 594, but is so interwoven with the authority granted, as to form in itself a part of it. It was intended for the protection of the public, as well as of the rights of the individual citizen, and such requisitions are always construed to be mandatory." [81 Md. at 291]

Lee argues that his effort is neither to disenfranchise Mahoney nor to correct the registration lists which, he says, are the matters with which § 3-16 is concerned, but to have Mahoney declared ineligible as a candidate, a matter with which § 3-16 is not concerned. The weakness of this argument is that Mahoney's eligibility to run as an independent candidate depended on whether the registration lists showed, at the time he sought to do so, that he was registered as a decline. As Judge Proctor found, "the fact that [Mahoney] had changed his registration from 'Democrat' to 'Decline' received considerable publicity in the press and was a well-known fact throughout the entire State." Equally well-known—indeed publicly and widely stated—was that Mahoney had sought and secured the change so that he could run for the Senate as an independent. Lee had from April 26 to May 21, which was the Tuesday which preceded September 10, the date of the primary, by sixteen weeks, in which to challenge the Board's action in changing Mahoney's registration from democrat to decline by utilizing the procedures established by § 3-16. Had he done so, he could not have failed either in the circuit court or in this Court to have corrected the Board's error and to have required it to again list Mahoney as a democrat; and Mahoney, if listed as a

registered democrat, would not have been eligible to run as a candidate by petition. Whether Lee could or could not block Mahoney's candidacy by petition depended upon Mahoney's registration status, and the propriety and correctness of that status could have been inquired into under §§ 3-16 and 3-21. Since the special statutory remedies of §§ 3-16 and 3-21 were available to Lee and would have been effective in securing the result he sought, we find that he was confined to those remedies and, not having made timely use of them, could not later invoke the ordinary jurisdiction of the courts to accomplish the same results. *Cf. Parker v. Board of Election Supervisors,* 230 Md. 126.

Lee says further that to construe the election laws as we have construed them would permit horrendous results. He poses a supposititious case—the election Board less than sixteen weeks before election illegally or fraudulently permits an alien newly arrived in Maryland, who is *non compos mentis* and a minor, with various felony convictions to run as a petition candidate —in which § 3-16, by its limitation as to time, would not be available to defeat the illegality or fraud. His fears are groundless. Statutory remedies must be followed exclusively only if they are available and effective under the circumstances. The courts are always ready, in election cases, as in other instances involving public officials or agencies, to exercise if necessary their customary jurisdiction to deal with fraudulent conduct and to correct illegal, arbitrary or capricious action. *Hecht v. Crook,* 184 Md. 271-280; *Heaps v. Cobb,* 185 Md. 372 at 379; 24 Md. L. Rev. 1 at 35 *ff.* We said in *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292 at 300, citing *Hecht* and *Heaps*: "If the legislature has not expressly provided for judicial review, a court will ordinarily utilize its inherent powers to prevent illegal, unreasonable, arbitrary or capricious administrative action."