RENEE DuBOIS ET AL. *v.* CITY OF COLLEGE
PARK ET AL.

[No. 135, September Term, 1976.]

*Decided July 1, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Kenneth A. Lechter* for appellants.

*Morris Topf* for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

This case presents the question of whether an action for declaratory judgment instituted by three registered voters of the City of College Park, seeking a declaration that the councilmanic districts of the city were unconstitutionally apportioned, was properly dismissed on the ground that the plaintiffs were not "bona fide residents of College Park" and therefore lacked standing to maintain the action.

The action was brought in the Circuit Court for Prince George's County. It was alleged that the plaintiffs, Renee DuBois and David Johnson, are students at the University of Maryland, residents of College Park, and registered to vote

in city elections pursuant to the city charter. Later, Zachary Kinney, who was also alleged to be a student at the University of Maryland, a resident of College Park and a registered voter of the city, was added as a party plaintiff. The plaintiffs claimed that the 1970 College Park census shows that the present councilmanic districts, established in 1967, are unequally apportioned and that the city, although having had an adequate opportunity to do so, has failed to reapportion the districts. It was alleged that, as a result of this malapportionment, the votes of the plaintiffs and those similarly situated are debased and they are deprived of the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. The action was brought by the plaintiffs in their own behalf and on behalf of all those University of Maryland students similarly situated. The basis of the plaintiffs' complaint, as developed at trial, is that the population figures upon which the councilmanic districts are apportioned exclude students residing on the campus of the University of Maryland, with the result that the two "student" districts contain two to three times the population of the "non-student" districts.

The City of College Park, while contending that the districts are constitutionally apportioned on the basis of population figures including only bona fide residents of College Park, argued primarily that the plaintiffs did not have standing to maintain the action and were not proper representatives of the class which they purported to represent. Although the city did not attempt to controvert the allegation that the plaintiffs were duly registered voters of the City of College Park, it did present evidence, over the plaintiffs' objections, that the plaintiffs actually resided in areas other than College Park and therefore should not have been allowed to register as voters of College Park.

At the conclusion of the trial and submission of legal memoranda, the trial court dismissed the action for lack of standing. The court reasoned that, under the criteria set forth in *Bainum v. Kalen*, 272 Md. 490, 325 A. 2d 392 (1974), none of the plaintiffs were actually domiciled in College Park and therefore were not injured by the alleged

malapportionment. Additionally, the court found that although two of the plaintiffs, Kinney and Johnson, lived in districts which, "if their contentions prevail, are underrepresented," the third plaintiff, Renee DuBois, lived in a district which was overrepresented. Therefore, the court found that even if Renee DuBois were domiciled in College Park, she would not be injured by the apportionment scheme and would not have standing to challenge the city's districting. Finally, the court held that the suit could not be maintained as a class action because the plaintiffs, as non-residents, were not members of the class they purported to represent: those students of the University of Maryland who are residents of College Park and eligible to vote in city elections. The circuit court did not consider the merits of the case, *i.e.*, whether the districts were malapportioned.

The plaintiffs took an appeal to the Court of Special Appeals, and this Court issued a writ of certiorari to review the case prior to any decision by the Court of Special Appeals.

The plaintiffs contend that the fact that they are duly registered to vote in city elections pursuant to the College Park charter is sufficient to confer standing. They contend that the city cannot challenge their status as qualified voters in this proceeding by introducing evidence that they are not residents of College Park when the city has, in accordance with the procedures set forth in the city charter, registered them as voters. Because standing in an action challenging the constitutionality of apportionment of voting districts is premised upon the plaintiffs' status as registered voters, and because the city did not deny, but in fact admitted, that the plaintiffs are registered voters, the plaintiffs argue that the circuit court should not have gone behind the plaintiffs' status as voters. It is urged that a court must find that, at this time, the plaintiffs have standing to challenge the constitutionality of the city's apportionment scheme. We agree.

In *Baker v. Carr*, 369 U. S. 186, 204-208, 82 S. Ct. 691, 7 L.Ed.2d 663 (1962), in determining whether voters have

standing to challenge the constitutionality of apportionment of state legislative districts, the Supreme Court stated that the question of standing depends upon whether the party has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the Court so largely depends for illumination of difficult constitutional questions." Relying upon its prior cases, the Court held that "voters" who reside in allegedly malapportioned legislative districts sustain a "legally cognizable injury" and therefore have standing to maintain an action challenging the apportionment scheme. In the instant case, the city does not deny that the plaintiffs are registered voters of the City of College Park. As far as the record discloses, the city never instituted proceedings to have the plaintiffs' names removed from the registration lists, and the order in this case does not, and indeed cannot, affect the status of the plaintiffs as eligible voters. The plaintiffs, therefore, are still registered "voters," eligible to participate in College Park elections and thus, in view of *Baker v. Carr, supra,* would appear to have standing to maintain this action.

Moreover, the city charter provides procedures for the removal from the registration lists of those voters who were either improperly registered or who subsequently become ineligible. Although the city has not affirmatively sought to have the plaintiffs adjudicated as ineligible to vote, it in essence argues that the plaintiffs are not eligible to vote because they do not meet the residency requirement of § 14 of the City of College Park Charter. However, our prior cases indicate that where a statutory remedy is available to challenge the qualifications of voters on the registration lists, that statutory remedy is the exclusive method for challenging the qualifications of registered voters. The registration lists, in the absence of allegations of fraud on the part of election officials, are conclusive evidence of the qualifications of voters, and the qualifications of voters may not be challenged in collateral proceedings. *Lee v. Sec. of State & Mahoney,* 251 Md. 134, 246 A. 2d 562 (1968); *Moore v. Bay,* 149 Md. 286, 292-295, 131 A. 459 (1925).

In *Lee v. Sec. of State & Mahoney, supra,* the plaintiff, challenged the right of a candidate to run in a general election as an independent. The challenge was based upon the contention that the Board of Supervisors of Elections had improperly reopened the voter registration books, during which time the candidate changed his party affiliation from Democrat to "decline." To be eligible to run as an independent, the candidate must be registered as a "decline." This Court agreed that the Board, because of a misinterpretation of the election laws, had improperly reopened the registration books and allowed the candidate to change his party affiliation. However, the Court refused to declare the candidate ineligible despite the improper voter registration and affirmed the trial court's action dismissing the voter's challenge. The Court noted that the election code set forth administrative and judicial procedures by which the voter registration lists could be challenged and that the plaintiff had failed to follow these procedures. The Court held that the statutory procedures provided the exclusive remedy for the correction of the voter registration lists. Additionally, the plaintiff argued that the statutory remedy need not be followed since the purpose of the challenge was not to correct the voter registration lists but rather to have the candidate declared ineligible to run as an independent. In rejecting this argument, the Court pointed out that the eligibility of the candidate to run as an independent depended upon his status as a registered "independent" voter, and that this could be raised only pursuant to the statutory procedures, 251 Md. at 141.

In *Moore v. Bay, supra,* two unsuccessful candidates in a municipal election challenged the validity of that election on the ground that some registered voters participating in the election did not possess all of the qualifications required by the city charter and therefore were not legally qualified to vote. After stating that the validity of the election turned upon the question of the effect to be given to the registration lists, this Court held that the election was valid because it was the intent of the election laws "to make the final registration lists of voters conclusive evidence of those

entitled to vote at the ensuing municipal election." *Moore v. Bay, supra,* 149 Md. at 296. In reaching this conclusion, the Court noted that the local election law, which incorporated by reference consistent provisions of the state election laws, provided a comprehensive plan for the maintenance of registration lists. Thus, the local election law required that the city clerk enter on the registration lists only those applicants who satisfied the clerk by proof, under oath, that they met the qualifications of voters set forth in the city charter. The registration lists so compiled by the clerk were then to be reviewed by city officials and "; ay person [who] should feel himself aggrieved by the action of the clerk in registering . . . the name of any person" could obtain a hearing before the city council to contest the registration. An appeal from the determination of the city council could be taken to the circuit court. Additionally, the local law provided that the penalties prescribed by the general election laws should apply to all municipal elections. *Id.* at 291, 294. This Court concluded that these were sufficient procedures to insure the integrity of the registration lists, and that the election laws evidenced an intent that the registration lists, compiled according to these procedures, should be conclusive evidence of qualified voters of the city.

The qualifications for voters of the City of College Park, and the procedures for registering voters for city elections are found in §§ 12 through 17 (A) of the city charter. These procedures are similar to those involved in *Moore v. Bay, supra.* Any person who is entitled to register as a voter of the State of Maryland under the general election laws and who "shall have his actual residence in the City of College Park, in the sense that he had no other residence elsewhere, for the period of ninety (90) days next preceding a municipal election," is entitled to register if he satisfies the registering officer of these facts. Additionally, applicants who are registered to vote elsewhere in the State are required to file an affidavit affirming, *inter alia,* their intent to be members of the College Park community, § 14 of the charter. Persons registered pursuant to these provisions "shall be qualified voters of the City of College Park," § 12 of the charter.

532

Additionally, § 15 of the College Park Charter provides that "[t]he proceedings for the registration of voters and the maintenance of registration lists . . . shall conform as nearly as may be possible to the proceedings for the registration of voters and the maintenance of registration lists under the general election laws of this state." Under a provision of the state general election laws, Maryland Code (1957, 1976 Repl. Vol.), Art. 33, § 3-16, which is made applicable to College Park elections by virtue of § 15 of the city charter, any voter may file with the proper election officials "objections to the registration of any person whom such voter has reason to believe is not eligible to vote." Notice must be sent to the challenged voter, and a hearing must be held on the challenge by the election officials, with the presumption being that the voter is properly registered, § 3-16 (c), (d).[1] An appeal may be taken from any action by the officials to the circuit court, § 3-21. Additionally, election officials are to remove from the registration lists the names of those voters whom they have reason to believe have moved from the election district after proper notice to the voter, § 3-17.

---

1. Section 3-16 of Art. 33 provides as follows:

"§ 3-16. Challenges of voters and correction of lists; how made; forms.

"(a) *Who may file challenge or application for correction of lists; when and where filed.* — Any voter may file with the board or with the board of registry objections to the registration of any person whom such voter has reason to believe is not eligible to vote, or a request for the addition of any person whose name has been erroneously omitted or dropped from the registration list of any precinct. Application for the correction of any such precinct registration list or a challenge of the right to vote of a person named on such list may be made by any qualified voter at the office of the Board on or before the Tuesday, sixteen weeks preceding any primary election.

"(b) *Manner of making application or challenge.* — Such applications or challenges shall be made in the form provided by subsection (e) of this section and the forms shall be provided by the board for that purpose. The voter shall state thereon, under oath and of his own personal knowledge, the reason for the application or challenge. Thereafter the voter so applying or challenging shall be required to appear in person at the time of the hearing on the application or challenge as provided for in subsection (d) of this section and for wilful failure to so appear shall be subject to the penalties provided for in § 24-27 of this article.

"(c) *Notice; voter may appear in person or by counsel.* — Persons whose right to register has been challenged and persons

As in *Moore v. Bay, supra,* the provisions found in the College Park Charter, as well as those provisions of the general election laws made applicable to College Park elections, provide sufficient safeguards to insure that only qualified voters appear on the registration lists, and to demonstrate the intent of the election laws that the registration lists be deemed conclusive evidence that those who are registered are qualified voters. Moreover, a specific statutory procedure has been provided for correction of the registration lists. Generally, where a special statutory remedy is provided, that remedy is usually deemed exclusive, and "the litigant must adopt that [remedy] and must not by-pass the administrative body or official, by pursuing other remedies." *Schneider v. Pullen,* 198 Md. 64, 68, 81 A. 2d 226 (1951); *accord, Solely v. St. Comm'n on Human Rel.,* 277 Md. 521, 526, 356 A. 2d 254 (1976);

whose names are alleged to have been erroneously omitted or dropped from the registration lists shall be given written notice, sent by mail, addressed to the voter at the last address given on his registration form. Any voter so notified may appear in person or by counsel.

"(d) *Hearing and action of board on applications and challenges.* — The board of registry shall sit for the purpose of hearing applications for changes in such registration lists, or challenges of the right to vote on such lists. They shall meet on the Tuesday fourteen weeks before an election at such hours as the board may designate. If all such applications or challenges be not determined on that day, they shall sit during the same hours on succeeding days until all cases are heard and decided. If it is not possible to hear all such cases within two days, the board may appoint one or more boards of registry, each consisting of two members of opposite political parties, to aid in hearing such applications or challenges at a rate of compensation fixed as provided in § 2-6 of this article. At the request of either party, the board shall issue subpoenas to witnesses to appear at such hearings, who shall be sworn and examined. All cases shall be decided immediately after hearing. No voter as to whom an application or a challenge has been made shall be removed from the registration lists unless the application or challenge is substantiated by affirmative proof. In the absence of such proof, the presumption shall be that the voter as to whom the application or challenge was made is properly registered. If the board is satisfied that the person so challenged, omitted or dropped from the registration lists has actually moved to another precinct and is presently residing within that other precinct, the board may transfer that person to the registration list of the precinct in which he presently resides.

"(e) *Form of challenge.* — Objections to the registration of any person shall be made on a form prescribed by the State Administrative Board of Elections Laws."

*Agrarian, Inc. v. Zoning Inspector,* 262 Md. 329, 332, 277 A. 2d 591 (1971); *Lee v. Sec. of State & Mahoney, supra.* If it is believed that the plaintiffs are not qualified voters and should be removed from the voter registration lists, the procedures set forth in the election laws should be followed. The city cannot, by merely moving to dismiss for lack of standing in this proceeding, contest the fact that those registered according to the city charter are not qualified voters. *See Lee v. Sec. of State & Mahoney, supra,* 251 Md. at 141-142. We hold, therefore, that the plaintiffs, as registered voters, have standing to maintain the present action.

The trial court also dismissed the action as to Renee DuBois on the alternative ground that, as a resident of a councilmanic district which was "overrepresented," she had sustained no injury and therefore lacked standing to maintain this action. However, in view of *Swann v. Adams,* 385 U. S. 440, 443, 87 S. Ct. 569, 17 L.Ed.2d 501 (1967), where the Supreme Court held that residents of a legislative district which received constitutional treatment under a redistricting plan had standing to maintain an appeal, Ms. DuBois would appear to have standing to maintain this action. Moreover, Art. III, § 5 of the Maryland Constitution, although not applicable to municipal legislative bodies, does reflect a State policy that any registered voter has a sufficient interest in the apportionment of electoral districts to challenge the constitutionality of a reap-. portionment scheme. Article III, § 5. expressly authorizes "any registered voter" to petition this Court to review the legislative districting plan for the General Assembly of Maryland. We therefore hold that Renee DuBois, as a registered voter of College Park, has a sufficient interest in the apportionment of that city's councilmanic districts to have standing to maintain this action.

Finally, the trial court dismissed the class action on the ground that since the plaintiffs were not residents of the City of College Park, they were not proper representatives of the class of persons whom they purported to represent. That class is composed of persons who are, *inter alia,*

residents of College Park and qualified to vote in all city elections. It follows from the fact that because the plaintiffs are registered voters of the City of College Park, they are, for voting purposes, residents of the City of College Park. Therefore, we hold that the plaintiffs are proper representatives of the class which they purport to represent.

Because we hold that the trial court erred in dismissing this action, both as to the plaintiffs individually and as to the class action, we will remand this case to the Circuit Court for Prince George's County for consideration of the merits. We wish to emphasize that our holding in this case is limited to the question of whether the trial court, in this action, properly considered evidence as to the plaintiffs' status as residents of the City of College Park where their status as registered voters had not been challenged in a proper proceeding. We express no opinion as to whether the plaintiffs are domiciled in College Park, and nothing contained herein should prejudice the rights of any parties in any proceeding in which the plaintiffs' registration is properly challenged.

> *Judgment reversed and case remanded to the Circuit Court for Prince George's County for further proceedings not inconsistent with this opinion.*
>
> *Appellees to pay costs.*